Wayne BOWKER *v.* STATE of Arkansas

CR 04-817                                         214 S.W.3d 243

Supreme Court of Arkansas
Opinion delivered September 29, 2005

Clark & Spence, by: George R. Spence, for appellant.

Mike Beebe, Att'y Gen., by: Valerie L. Kelly, Ass't Att'y Gen., for appellee.

JIM GUNTER, Justice. This appeal arises from the conviction and sentence of appellant, Wayne Bowker, in Benton County Circuit Court for the second-degree sexual assault of C.W., a minor. Appellant was charged with one count of second-degree sexual assault, a violation of Ark. Code Ann. § 5-14-125(a)(4)(A)(iii) (Supp. 2001), a class B felony. Appellant was convicted by a jury and sentenced to ten years' imprisonment. On appeal, he argues that the circuit court erred in denying his motion for directed verdict, and that the circuit court erred in denying his motion to declare the statute under which he was charged unconstitutionally vague and overbroad. We affirm.

On November 21, 2001, C.W., a fifteen-year-old girl at the time, spent the night at the home of appellant and his wife, Heather Bowker. Heather, who was pregnant, was not feeling well and asked C.W., a family friend, and her younger sister, K.W., to come over for the night and to babysit Heather's young daughter. Both C.W. and Heather testified that C.W. often spends the night, and C.W. usually sleeps in Heather's bed while appellant sleeps on the couch. That night, Heather was asleep in the bed, and after watching some movies, C.W. got in bed with her. Appellant was on Heather's side of the bed playing video games.

At trial, the following colloquy occurred during C.W.'s direct examination:

Q: What's the next thing you remember?

A: I woke up, I don't know what time, and [appellant] had his hand up my shirt, under my bra. And then I kind of moved my arm

and moved over towards the wall, and then he put his hand up the bottom of my shorts and my underwear.

Q: Did he put his hand under your underwear on the skin.

A: Yes.

Q: Okay. What did he do with his hand?

A: Then he put his finger in me.

Q: [C.W.], just to be specific, I know this is tough, did he put his finger in your vagina?

A: Yes.

Q: Is this how you woke up?

A: Yes.

C.W. testified that, at that point, she got out of bed and went into the living room to sleep on the couch. When appellant went to the bathroom, she tried to wake Heather, but Heather would not wake up. C.W. then went back to the couch, and tried to go back to sleep. Appellant went to the couch where C.W. was sleeping, and C.W. testified:

> He came back over to the couch and he put a blanket on me and a pillow over my head, and he pulled the blanket down and he tried to go up my shorts again. And I turned around and I told him, said no, and then he rubbed my face like this, and he said you want me to leave, and I said yes, I do. So he went and sat down and started watching [a movie].

The next morning, appellant, Heather, C.W., and her sister went to church, where they met C.W.'s mother and stepfather. C.W.'s mother testified:

> I knew that [C.W.] wasn't her normal self whenever she came into the church service, because usually she sits with the youth group . . . and she didn't do that. She sat behind us that morning . . . That is very unusual.

After church, C.W. told her mother and her stepfather about the incident, and her parents decided to confront appellant that afternoon. Both C.W.'s mother and her stepfather testified that

they went to appellant's home, and when they questioned him on the subject, he continued to play video games and would not look at them. C.W.'s mother asked appellant if C.W. told the truth, and she testified that "at first [appellant] dropped his head, and he said, "Yeah, I guess she is [telling the truth]." Appellant admitted that C.W.'s allegations were true, and that he had molested her.

C.W.'s stepfather testified that he and his wife were friends with appellant and his wife, Heather. He further testified that he would allow his children to spend the night at the Bowkers' residence, that he had known the Bowkers for quite a while, and that he was "particular" about the people with whom he let his children spend the night. He stated that he wanted the children "[t]o be taken care of like I would take care of them. You know, just like I would take care of anybody else's kids that stayed at our house."

Jesse Martinez, an officer with the Little Flock Police Department in Benton County, testified that he made contact with appellant on the evening of November 21, 2001. The State introduced a tape-recorded statement, which was proffered during Officer Martinez's testimony, during which appellant admitted that he touched C.W.'s "private parts" while in the bedroom.

On December 9, 2003, the State filed a felony information, charging appellant with second-degree sexual assault. On December 16, 2003, appellant was tried before a jury on the second-degree sexual-assault charge. Prior to opening statements, appellant's attorney made a motion, arguing that Ark. Code Ann. § 5-14-125(a)(4)(A)(iii), the criminal statute under which appellant was charged, was unconstitutionally vague and overbroad. Appellant maintained that under the statute, the State required the jury to find that appellant was a temporary caretaker, and because no definition for the term was provided in the code, the statute was void for vagueness and violated his due-process rights. The State responded, arguing that, although there was no definition of "temporary caretaker" under the statute, the law required the jury to use their common sense. The trial court denied appellant's motion to declare the statute unconstitutional. At trial, appellant made his timely motions for directed verdict on the basis that the State did not establish the element of appellant being a "temporary caretaker." The trial court denied both motions for directed verdict. Appellant was convicted of second-degree sexual assault and was sentenced to ten years' imprisonment in the Arkansas

Department of Correction. Appellant brings his appeal from this order and the trial court's ruling on his motion to declare the statute unconstitutional.

For his first point on appeal, appellant argues that the circuit court erred in denying his motion for directed verdict. Specifically, appellant contends that the circuit court erred because the State did not present sufficient proof of appellant as a "temporary caretaker" under the language of section 5-14-125(a)(4)(A)(iii).

Due to double-jeopardy concerns, we first are required to address appellant's challenge to the sufficiency of the evidence supporting his conviction. *See Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003). *See also Jones v. Arkansas Dep't of Human Servs.*, 361 Ark. 164, 205 S.W.3d 778 (2005) (determining the sufficiency-of-the-evidence question before the constitutional questions). It is well settled that we treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Jones v. State*, 357 Ark. 545, 182 S.W.3d 485 (2004). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Id.* On appeal, we view the evidence in the light most favorable to the State, considering only that evidence that supports the verdict. *Id.*

At the time of the offense, section 5-14-125(a)(4)(A)(iii) provided in pertinent part:

> (a) A person commits sexual assault in the second degree if the person:
>
> . . .
>
> (4)(A) Engages in sexual contact with another person who is less than eighteen (18) years of age and the person:
>
> (iii) Is the minor's guardian, an employee in the minor's school or school district, or *a temporary caretaker.*

*Id.* (emphasis added).

Under the statute, a person committed second-degree sexual assault if the person engaged in sexual contact with another person who was less then eighteen years of age, and the person was

a temporary caretaker. *See* Ark. Code Ann. § 5-14-125(a)(4)(A)(iii). "Sexual contact" meant "any act of sexual gratification involving the touching, directly or through clothing, of the sex organs, buttocks, or anus of a person or the breast of a female[.]" Ark. Code Ann. § 5-14-101 (Supp. 2001).

■ The State filed charges pursuant to section 5-14-125(a)(4)(A)(iii), alleging that appellant was a "temporary caretaker" who "engaged in the sexual contact with the victim." We have found no published Arkansas case directly on point that defines the challenged term, "temporary caretaker." Thus, this issue requires statutory interpretation. In construing section 5-14-125(a)(4)(A)(iii), we are mindful that the first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Crawford v. State*, 362 Ark. 301, 208 S.W.3d 146 (2005). When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction. *Id.*

■ Until the legislature defines the term, we must look to the plain meaning of the term, "temporary caretaker." "Temporary" is defined as "lasting for a time only; existing or continuing for a limited (usually short) time; transitory." *Black's Law Dictionary* 1504 (8th ed. 1999). "Caretaker," which is also defined as "caregiver," means "a person, usually not a parent, who has and exercises custodial responsibility for a child or for an elderly or disabled person." *Black's Law Dictionary* 225 (8th ed. 1999).

■ Further, on the issue of temporary caretaker, we are guided by the court of appeals' reasoning in *Murphy v. State*, 83 Ark. App. 72, 117 S.W.3d 627 (2003). Murphy and Ray were convicted of first-degree sexual assault of a sixteen-year-old boy. On appeal, Murphy and Ray challenged· the sufficiency of the evidence to support their convictions, which required the State to prove their status as temporary caretakers or persons in a position of trust or authority of the victim. The court of appeals cited with approval *People v. Secor*, 664 N.E.2d 1054 (Ill. App. 1996), for the definition of a person in a position of trust or authority in relation to the victim, and stated:

> In *Secor*, the court affirmed a conviction of sexual assault against a fourteen-year-old victim who was spending the night with the

appellant's son in their home. The appellant was not a stranger to the victim, but rather a friend and neighbor of the victim's family. The court determined that although the appellant and victim were not related, their relationship raised a strong inference of trust and supervision; and further, that the appellant's function in that relationship could be characterized, at a minimum, as that of a babysitter or chaperone. This situation is analogous to the instant case. Under the fact of this particular case [*Murphy*], we find that there was sufficient evidence from which the jury could have determined that the appellants were in a position of trust or authority in relation to the victim.

*Murphy*, 83 Ark. App. at 80, 117 S.W.3d at 632.

■■ We now turn to the case *sub judice*. First, there was substantial evidence that appellant made sexual contact with the victim. Here, C.W. testified to the fact that, on the evening of November 21, 2001, she spent the night at the home of appellant and Heather Bowker because Heather had asked C.W. to watch her young child. C.W. also testified appellant fondled her breast and digitally penetrated her. Further, appellant admitted in a tape-recorded statement made to Officer Martinez that C.W.'s allegations were true. Thus, appellant's actions toward C.W. fit the definition of "sexual contact" as defined by Ark. Code Ann. §§ 5-14-101 and 5-14-125(a)(4)(A). Second, there was substantial evidence that the victim was under eighteen years of age. C.W. testified that she was fifteen years of age on the night of the offense. *See* Ark. Code Ann. § 5-14-125(a)(4)(A).

■■ Third, there was substantial evidence that appellant was C.W.'s temporary caretaker on the night that he made sexual contact with her. Similar to the appellants in *Murphy*, appellant in this case was in a position of trust, as he was a family friend to whom C.W.'s parents entrusted her, and he was in a position to care for C.W. while she spent the night at his house. Both C.W.'s mother and stepfather testified at trial that they trusted appellant to care for their daughter as they would. Therefore, appellant fulfills the role of "temporary caretaker" as we define the term. For these reasons, we hold that there was substantial evidence to support appellant's conviction for second-degree sexual assault, and we conclude that the circuit court did not err in denying appellant's motions for directed verdict.

For his second point on appeal, appellant argues that the trial court erred in denying appellant's motion to declare Ark. Code Ann. § 5-14-125(a)(4)(A)(iii) vague and overbroad. Specifically, appellant contends that the statute is impermissibly vague and overbroad because the "meaning of the term, 'temporary care-taker,' cannot be reasonably derived from the code."

In response, the State argues that the circuit court did not err in ruling that the statute was constitutional. Specifically, the State contends that appellant did not meet his burden of proving that the statute was unconstitutional as void for vagueness.

At the outset, we note that appellant challenges the constitutionality of the statute on overbreadth grounds for the first time in his brief. Before trial, appellant argued that the statute was void for vagueness, and appellant reiterated that argument during his motions for directed verdict. It is well settled that we will not address arguments raised for the first time on appeal. *Miner v. State,* 342 Ark. 283, 28 S.W.3d 280 (2000). Because appellant raises the overbreadth issue for the first time on appeal, we are precluded from reaching the merits of his argument.

We now address whether Ark. Code Ann. § 5-14-125(a)(4)(A)(iii) is void for vagueness. Statutes are presumed constitutional, and the burden of proving otherwise is on the challenger of the statute. *Reinert v. State,* 348 Ark. 1, 71 S.W.3d 52 (2002). If it is possible to construe a statute as constitutional, we must do so. *Id.* Because statutes are presumed to be framed in accordance with the Constitution, they should not be held invalid for repugnance thereto unless such conflict is clear and unmistakable. *Id.*

We have said that a law is unconstitutionally vague under due process standards if it does not give a person of ordinary intelligence fair notice of what is prohibited, and it is so vague and standardless that it allows for arbitrary and discriminatory enforcement. *Cambiano v. Neal,* 342 Ark. 691, 704, 35 S.W.3d 792, 799-800 (2000). As a general rule, the constitutionality of a statutory provision being attacked as void for vagueness is determined by the statute's applicability to the facts at issue. *Reinert,* 348 Ark. at 4-5, 71 S.W.3d at 54. When challenging the constitutionality of a statute on grounds of vagueness, the individual challenging the statute must be one of the "entrapped innocent," who has not received fair warning; if, by his action, that individual clearly

falls within the conduct proscribed by the statute, he cannot be heard to complain. *Id.* at 5, 71 S.W.3d at 54.

Here, appellant can hardly be considered an "entrapped innocent" under *Reinert, supra,* as he admitted to molesting C.W. More specifically, his actions toward C.W. fall within the conduct proscribed by Ark. Code Ann. § 5-14-125, and under the plain meaning of the term, "temporary caretaker," appellant was given sufficient warning under the language of the statute of the prohibited conduct, particularly because appellant was an adult in charge of C.W.'s care when he sexually assaulted her. We therefore hold that the statute is not void for vagueness. Because appellant has not met his burden of proving that the statute is unconstitutional, we further hold that the circuit court did not err in its ruling. Accordingly, we affirm the trial court's denial of appellant's motion to declare the statute unconstitutional.

Affirmed.