Wesley JEFFERSON *v.* STATE of Arkansas

CR 07-681 276 S.W.3d 214

Supreme Court of Arkansas
Opinion delivered February 14, 2008

*Jeff Rosenzweig*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Laura Shue*, Ass't Att'y Gen., for appellee.

JIM HANNAH, Chief Justice. Appellant Wesley Jefferson was convicted by a St. Francis County jury of capital murder, aggravated robbery, theft of property, and fleeing in connection with the robbery of a convenience store and the death of Arkansas State Trooper Mark Carthron. Jefferson was sentenced to a term of life imprisonment without the possibility of parole, 240 months, 120 months, and 72 months, respectively.[1] On appeal, Jefferson argues that the circuit court erred in denying his motion for directed verdict on the charge of capital murder and the relevant lesser-included offenses. He also argues that the circuit court erred in denying his motion for mistrial when the prosecutor made improper remarks during closing argument. Jefferson further contends that the affirmative-defense provisions of the capital-murder statute are unconstitutional. Finally,

---

[1] Jefferson's sentences for aggravated robbery, theft of property, and fleeing were to run consecutive to each other, but all three of these sentences were to run concurrent with capital murder.

he argues that his conviction for fleeing should be reduced from a felony to a misdemeanor. As this is a criminal appeal involving a sentence of life imprisonment, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(2). We find no error and, accordingly, we affirm.

## I. Directed-Verdict Motion

Jefferson first argues that the circuit court erred in denying his motion for directed verdict on the charge of capital murder and the relevant lesser-included offenses. We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Coggin v. State*, 356 Ark. 424, 156 S.W.3d 712 (2004). This court has repeatedly stated that in reviewing a challenge to the sufficiency of the evidence, we review the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Stone v. State*, 348 Ark. 661, 74 S.W.3d 591 (2002). We affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Haynes v. State*, 346 Ark. 388, 58 S.W.3d 336 (2001).

Circumstantial evidence may constitute substantial evidence to support a conviction. *Ross v. State*, 346 Ark. 225, 57 S.W.3d 152 (2001). The longstanding rule in the use of circumstantial evidence is that, to be substantial, the evidence must exclude every other reasonable hypothesis than that of the guilt of the accused. *Id.* The question of whether the circumstantial evidence excludes every other reasonable hypothesis consistent with innocence is for the jury to decide. *Id.* Upon review, this court must determine whether the jury resorted to speculation and conjecture in reaching its verdict. *Id.*

A person commits capital murder if acting alone or with one (1) or more other persons, he or she commits or attempts to commit aggravated robbery "and in the course of and in furtherance of" aggravated robbery "or in immediate flight therefrom, he or she or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life." Ark. Code Ann. § 5-10-101(a)(1) (Supp. 2005).

The record reveals the following facts. On September 11, 2005, Jefferson and an accomplice robbed a Forrest City convenience store. Malissa Ajimu, a clerk working at the store, testified that Jefferson pulled a gun on her and that his accomplice took

money out of the store's register and put it in a Wal-Mart bag; she stated that the two also took her cell phone. Jefferson and his accomplice then fled eastward on Interstate 40 in a stolen car, and a high speed chase with police ensued. Arkansas State Trooper Lowry Astin pursued Jefferson's vehicle. He testified that he was aware that Jefferson's car was stolen, that Jefferson and his passenger were suspects in a recent aggravated robbery, and that Trooper Mark Carthron was available a couple of miles up Interstate 40 with stop sticks, which are used to attempt to stop a fleeing car by deflating its tires. When the troopers engaged their lights and sirens, Jefferson did not pull the car over, but immediately increased his speed to at least 95 miles per hour and continued for about two miles. Trooper Mike Kennedy testified that Jefferson made no effort to stop. Rather, Jefferson drove his car in the right lane then abruptly shot back to the left when Trooper Carthron stepped out with the stop sticks in his hands and threw them into the roadway. Jefferson's car ran over the stop sticks[2] and, thereafter, Trooper Carthron proceeded on foot into the roadway. Trooper Astin, who was still pursuing Jefferson's vehicle, at a reduced rate of speed, was unable to avoid hitting Trooper Carthron, who later died.

### A. Causation

In his first subpoint under his directed-verdict argument, Jefferson contends that there is insufficient evidence to support a conviction for capital murder because he did not "cause" the death of Trooper Carthron. "Causation may be found where the result would not have occurred but for the conduct of the defendant operating either alone or concurrently with another cause unless the concurrent cause was clearly sufficient to produce the result and the conduct of the defendant clearly insufficient." Ark. Code Ann. § 5-2-205 (Repl. 1997). "[O]ne whose wrongdoing is a concurrent proximate cause of an injury is criminally liable therefor (other elements of liability being present) the same as if his wrongdoing were the sole proximate cause of the harm done." *McClung v. State*, 217 Ark. 291, 293, 230 S.W.2d 34, 35 (1950). For proximate causation, this court must find more than that a given result would not have happened but for the prior occurrence of fact "A"; rather, we must find that fact "A" was a substantial and currently operative factor in bringing about the result in question.

---

[2] Jefferson's car eventually stopped about a mile down the road with one flat tire.

*Id*. at 293, 230 S.W.2d at 35. The doctrine of contributory negligence recognized in civil actions is inapplicable in a criminal case. *See, e.g., Benson v. State*, 212 Ark. 905, 208 S.W.2d 767 (1948) (noting that 'if a defendant is found to be the cause of death, he is criminally responsible whether or not a victim's failure to use due care also contributed to the cause of death). Our law is well settled that, where there are concurrent causes of death, conduct which hastens or contributes to a person's death is a cause of death. *Cox v. State*, 305 Ark. 244, 248, 808 S.W.2d 306, 309 (1991) (citing *Tackett v. State*, 298 Ark. 20, 766 S.W.2d 410 (1989); *McClung, supra; Rogers v. State*, 60 Ark. 76, 29 S.W. 894 (1894); W.R. LaFave & A.W. Scott, 1 *Substantive Criminal Law*, § 3.12 (1986); R.M. Perkins & R.N. Boyce, *Criminal Law*, 783-4 (3d ed. 1982)).

Jefferson states that there is no dispute that Trooper Carthron was hit by Trooper Astin's vehicle after the Jefferson vehicle had passed by. Further, Jefferson states, Trooper Carthron ran into the road to retrieve the stop sticks, in contravention of training and proper usage of the stop sticks. Jefferson maintains that the concurrent causes of Trooper Carthron's death are Astin's collision with him and Carthron's failure to observe the proper usage of the stop sticks. Jefferson contends that his conduct — merely leading the police on a chase, however ill advised that might have been and however tragic the death of Carthron — is insufficient causation standing alone.

In support of his argument, Jefferson points to the Original Commentary to Ark. Code Ann. § 5-2-205 (Repl. 1995), which provides:

> This section comes to grips with problems associated with the causal relationship between conduct and results. These are singularly complex and, of course, extend in scope beyond the criminal law. The section supplies a "but for" test, modified to the extent that a sufficient concurrent cause does not exculpate unless the actor's conduct was clearly insufficient to produce the result occasioning the prosecution. The test is congruent with former law. *See McClung v. State*, 217 Ark. 291, 230 S.W.2d 34 (1950).

> *See* AMCI 4003.

In *McClung*, this court affirmed a conviction for involuntary manslaughter where the appellant drove recklessly and collided with another driver who may have been driving negligently at the time of the collision. Jefferson states that *McClung* does not present

the fact situation of this case, nor do other cases interpreting Ark. Code Ann. § 5-2-205, such as *Anderson v. State*, 312 Ark. 606, 852 S.W.2d 309 (1993), *Porter v. State*, 308 Ark. 137, 823 S.W.2d 846 (1992), *Cox, supra*, and *Tackett, supra*. In other words, Jefferson states, neither *McClung* nor any reported Arkansas cases under the 1976 Criminal Code deal with the situation of such attenuation between the fatal injury and the physical act of the defendant.

The State argues that substantial evidence supported a reasonable inference by the jury that the troopers' conduct did not produce the result by itself and that Jefferson's conduct clearly did. The State contends that Jefferson's aggravated robbery, speeding, and fleeing on a busy interstate were substantial and currently operative factors in bringing about Trooper Astin's pursuit and Trooper Carthron's use of the stop sticks. We agree. As the State points out, because Jefferson engaged in life-threatening activity, his conduct brought about Trooper Carthron's use of a public-safety technique employed to stop Jefferson as quickly as possible. The technique was not implemented until Jefferson initiated the chase and obviously would not have been used if Jefferson had pulled over. Jefferson's actions were substantial factors in bringing about Trooper Carthron's death. While the cases cited by Jefferson may contain different facts from the instant case, it is clear that in this case there was no evidence of far-fetched and remote causation. *See McClung*, 217 Ark. at 294, 230 S.W.2d at 35. But for Jefferson's aggravated robbery, speeding, and fleeing, Trooper Carthron would not have been in the roadway and would not have been hit by Trooper Astin. The circuit court did not err in rejecting Jefferson's argument that the State failed to present sufficient evidence of causation.

### B. Under Circumstances Manifesting Extreme Indifference to the Value of Human Life

Jefferson contends that the evidence is insufficient to sustain a conclusion that his actions were "under circumstances manifesting extreme indifference to the value of human life." This court has defined "extreme indifference" as deliberate conduct that culminates in the death of another person. *See, e.g., Wyles v. State*, 368 Ark. 646, 249 S.W.3d 782 (2007); *Branstetter v. State*, 346 Ark. 62, 57 S.W.3d 105 (2001); *Davis v. State*, 325 Ark. 96, 925 S.W.2d 768 (1996). Jefferson argues that his deliberate conduct, even read in the light most favorable to the State, did not culminate in the death of Trooper Carthron. Jefferson states:

The word "culminate" means "to reach the highest or a climactic or decisive point." Had the Jefferson vehicle hit Trooper Carthron or someone else, *that* would have been the culmination of Jefferson's deliberate conduct. But the collision of a trailing car with a person whom Jefferson had passed without injury is too attenuated under the statute and cannot be a basis for a homicide conviction.

It appears that Jefferson asserts that the State was required to prove that Jefferson's vehicle hit Trooper Carthron. We disagree. As we recently noted in *Perry v. State*, 371 Ark. 170, 177-78, 264 S.W.3d 498, 503 (2007):

This court has a line of cases in which it has said that in felony murder "the culpable intent or *mens rea* relates to the crime of the underlying felony . . . and not to the murder itself." *Jenkins v. State*, 350 Ark. 219, 225, 85 S.W.3d 878, 881 (2002); *Cook v. State*, 345 Ark. 264, 269, 45 S.W.3d 820, 823 (2001); *Jones v. State*, 336 Ark. 191, 204, 984 S.W.2d 432, 438 (1999) ("[I]n felony murder, a defendant need only have the requisite intent to commit the underlying felony, not the murder").

. . . .

This court has observed recently that "[t]he requirement of extreme indifference involves actions that evidence a mental state on the part of the accused to engage in some life-threatening activity against the victim." *Williams v. State*, 351 Ark. 215, 224, 91 S.W.3d 54, 59 (2002). *See Jordan v. State*, 356 Ark. 248, 255, 147 S.W.3d 691, 694-95 (2004). Clearly, our reference to "against the victim" was not made with respect to a specific victim deliberately or purposefully killed, but generally referred to the person who died as a result of the defendant's perpetration of the felony.

Thus, the required intent when a person is killed in the course of and in furtherance of or in immediate flight from the felony, here, aggravated robbery, is the intent to commit the felony and not the intent to commit the murder. *See Jordan*, 356 Ark. at 255, 147 S.W.3d at 694. Jefferson does not dispute that he had the requisite intent to commit aggravated robbery.

Jefferson also argues that the Original Commentary to Ark. Code Ann. § 5-10-101 (Repl. 1995) makes clear that this situation cannot sustain a conviction for capital murder. The Original Commentary provides, in part:

Second, the killing must be done under "circumstances manifesting extreme indifference to the value of human life." The "extreme indifference" language makes it clear that proof of an inadvertent killing in the course of a felony will not suffice to establish liability under § 5-10-101(a)(1).... In the absence of this language, a conviction entailing punishment by death could be based on conduct that would otherwise support at most only a conviction of manslaughter or even negligent homicide — for example, where the actor, in making his escape, negligently causes the death of another in an automobile accident occurring several blocks away from the scene of the crime. The Code formulation resulted from an examination of considerations going to the heart of the felony murder rule itself[.]

■ Jefferson states that the accidental killing of one law enforcement officer by another in the course of pursuing a fleeing felon was specifically rejected by the framers of the Criminal Code as a felony murder — as evinced by the Original Commentary — and does not fit the strictly construed criteria of the relevant statute. The State contends that, while Jefferson makes much of the Original Commentary regarding the felony-murder statute, which notes that "proof of an inadvertent killing" and "negligently caus[ing] the death of another" will not suffice, the facts of this case show that Jefferson did not merely negligently cause the death, but caused the death "under circumstances manifesting extreme indifference to the value of human life." The State avers that a person who robs someone with a gun, flees with his accomplice and the loot in a stolen car on a busy interstate, and initiates a high-speed chase when pursued by several law-enforcement officers with their lights and sirens blaring engages in life-threatening activity. Therefore, the State argues that, viewing the evidence in the light most favorable to the State, substantial evidence supported a finding that Jefferson acted under circumstances manifesting extreme indifference to the value of human life. The State's argument is well taken. We hold that the circuit court did not err in denying Jefferson's directed-verdict motion on the grounds that the State failed to present sufficient evidence that Jefferson acted under circumstances manifesting an extreme indifference to the value of human life.

### C. Vagueness

Jefferson argues that the phrase "under circumstances manifesting extreme indifference to the value of human life" is void for

vagueness. Prior to trial, Jefferson argued as part of his motion to quash that this phrase was unconstitutionally vague. The circuit court denied this challenge. On appeal, Jefferson contends that the phrase has been interpreted inconsistently. Accordingly, he claims that this court's cases do not place a person on notice as to what conduct is prohibited.

Statutes are presumed constitutional, and the burden of proving otherwise is on the challenger of the statute. *Bowker v. State*, 363 Ark. 345, 214 S.W.3d 243 (2005). If it possible to construe a statute as constitutional, we must do so. *Id.* Because statutes are presumed to be framed in accordance with the Constitution, they should not be held invalid for repugnance thereto unless such conflict is clear and unmistakable. *Id.*

We have said that a law is unconstitutionally vague under due-process standards if it does not give a person of ordinary intelligence fair notice of what is prohibited, and it is so vague and standardless that it allows for arbitrary and capricious discriminatory enforcement. *Id.*; *Cambiano v. Neal*, 342 Ark. 691, 35 S.W.3d 792 (2000). As a general rule, the constitutionality of a statutory provision being attacked as void for vagueness is determined by the statute's applicability to the facts at issue. *Bowker, supra*; *Reinert v. State*, 348 Ark. 1, 71 S.W.3d 52 (2002). When challenging the constitutionality of a statute on grounds of vagueness, the individual challenging the statute must be one of the "entrapped innocent," who has not received fair warning; if, by his action, that individual clearly falls within the conduct proscribed by statute, he cannot be heard to complain. *Bowker*, 363 Ark. at 355, 214 S.W.3d at 249 (citing *Reinert*, 348 Ark. at 4-5, 71 S.W.3d at 54).

As previously noted, the phrase "under circumstances manifesting extreme indifference to the value of human life" does not add an additional *mens rea* element to felony murder. *Perry, supra*. The "extreme indifference" is not a culpable mental state relating to a specific victim but merely describes the dangerous circumstances generally set in motion by the defendant. *Id.*

The State argues that Jefferson has failed to meet his burden to show vagueness because the cases interpreting the phrase provide fair warning that it involves a life-threatening activity. We agree. Jefferson's actions of speeding and fleeing on a busy interstate clearly fell within the conduct prohibited by the "extreme indifference" phrase. The circuit court did not err in denying Jefferson's vagueness challenge to the phrase.

## II. Mistrial

Jefferson argues that the circuit court erred in denying his motion for mistrial based on a prosecutor's allegedly improper remarks during closing argument. The decision to grant or deny a motion for mistrial is within the sound discretion of the trial court and will not be overturned absent a showing of abuse or manifest prejudice to the appellant. *Tryon v. State*, 371 Ark. 25, 263 S.W.3d 475 (2007). A mistrial is a drastic remedy and should only be declared when there is error so prejudicial that justice cannot be served by continuing the trial and when it cannot be cured by an instruction to the jury. *Id.* Jefferson claims that he should have been granted a mistrial when the prosecutor: referred to Jefferson's failure to testify, offered his personal opinion and testimony, and made improper accusations against Jefferson and defense counsel. We will discuss each assertion of error in turn.

### A. Reference to Failure to Testify

During closing argument, the following colloquy occurred:

> DEPUTY PROSECUTING ATTORNEY: If you don't mind, your Honor, thank you. I want to specifically direct the jury's attention to camera 1 and camera 3. Camera 1 being at the top left and camera 3 being at the bottom left. Frame by frame. There has been no denial that the defendant is not the person armed with the weapon. There has been no proof submitted to you that the defendant —

> DEFENSE COUNSEL: Your Honor, may we approach?

BENCH CONFERENCE:

> DEFENSE COUNSEL: I move for a mistrial. This is a reference to the defendant's right not to testify.

> DEPUTY PROSECUTING ATTORNEY: Your Honor, it's not. I've indicated that there's been no proof submitted —

> DEFENSE COUNSEL: He said there's been no denial is what you said.

> THE COURT: Motion will be denied. But you've got to be careful —

DEPUTY PROSECUTING ATTORNEY: I will your Honor, thank you.

DEFENSE COUNSEL: Your Honor, without waiving the motion for denial — the motion for mistrial, the State Supreme Court requires that we move for an admonition. I think an admonition is insufficient, but I'm required in order to preserve the mistrial motion to request the admonition.

THE COURT: What do you desire that I say?

DEFENSE COUNSEL: Excuse me?

THE COURT: What do you desire that admonition be?

DEFENSE COUNSEL: Well, first, as I said, anything would be insufficient. I think what you have to say is that any implication that the defendant has an obligation to deny anything is erroneous or —

DEPUTY PROSECUTING ATTORNEY: That's fine, your Honor. That's fine.

THE COURT: Do you want me to say it that way?

DEPUTY PROSECUTING ATTORNEY: That's fine.

DEFENSE COUNSEL: Okay.

BENCH CONFERENCE CONCLUDED.

THE COURT: Members of the jury, before we proceed further, let me give you an admonition. Anything Mr. Morledge said that would imply that the defendant has any obligation to deny anything is erroneous and will not be considered by the jury in its deliberation in any manner.

Jefferson argues that the prosecutor's comment, that "[t]here has been no denial that the defendant is not the person armed with the weapon[,]" was clearly a reference to his failure to testify. He claims that this comment was an unacceptable incursion into his

Fifth Amendment right not to testify at trial. Jefferson contends that, due to the nature of the comment, he should have been granted a mistrial and that the admonition given was not sufficient to cure the prejudice caused by the comment. We disagree.

When a prosecutor is alleged to have made an improper comment on a defendant's failure to testify, we review the statements in a two-step process. *Armstrong v. State*, 366 Ark. 105, 233 S.W.3d 627 (2006). First, we determine whether the comment itself is an improper comment on the defendant's failure to testify. *Id*. The basic rule is that a prosecutor may not draw attention to the fact of, or comment on, the defendant's failure to testify, because this then makes the defendant testify against himself in violation of the Fifth Amendment. *Id*. A veiled reference to the defendant's failure to testify is improper, as well. *Id*. Should we determine that the prosecutor's closing argument statement did indeed refer to the defendant's choice not to testify, we would then determine whether it can be shown beyond a reasonable doubt that the error did not influence the verdict. *Id*.

The State asserts, and we agree, that the prosecutor's comment was not a veiled reference to Jefferson's failure to testify; rather, as pointed out by the State, the prosecutor made the comment in response to defense counsel's remarks in opening statements to the jury that he was "not going to insult your intelligence," and that the jury was likely to convict Jefferson of "theft by receiving of the car" and fleeing. Further, defense counsel stated that it was "also highly likely you would convict him of doing something illegal, wrong, at the store whether you determine it's aggravated robbery or whether you possibly determine it's a so-called simple robbery, or whether you determine it's something else, but I assume . . . you will find him guilty of some offense there, and punish him appropriately for that." Here, the prosecutor's statement referred to defense counsel's remarks during opening statement regarding Jefferson's involvement in the crime. Thus, this was an indication, completely aside from Jefferson's own nonappearance on the witness stand, on which the prosecutor was free to comment. *See Green v. State*, 365 Ark. 478, 505, 231 S.W.3d 638, 658-59 (2006). The circuit court did not abuse its discretion in denying Jefferson's motion for mistrial. In addition, any prejudice which might have resulted was cured by the circuit court's admonition to the jury that it should ignore any comment by the prosecutor that might have implied that Jefferson

had an obligation to deny any of the allegations. *See, e.g., Gates v. State,* 338 Ark. 530, 2 S.W.3d 40 (1999).

### B. *Personal Opinions and Testimony of Prosecutor*

Jefferson next contends that the prosecutor offered improper personal opinions and testimony during closing argument. Following is the relevant colloquy:

> DEPUTY PROSECUTING ATTORNEY: The second element we're going to talk about is whether or not the act of Trooper Carthron's death was under circumstances manifesting extreme indifference to the value of human life. Ladies and gentlemen, I'm 38 years old and I've been Mr. Long's Deputy for several years now, and in my role as a prosecutor, I've seen some bad, bad stuff. But I have never, as long as I have been prosecuting, seen or witnessed anything —

> DEFENSE COUNSEL: Your Honor, may I approach?

BENCH CONFERENCE:

> DEFENSE COUNSEL: This is improper argument for him to give his personal opinion. His personal opinion is specifically forbidden and certainly to reminisce about other cases that he's had that are not in evidence, not before the jury and not — and I, again, move for a mistrial and without waiving that, and even though it's our position that admonition is insufficient, I would move for an admonition, assuming you deny the mistrial.

> THE COURT: Motion for mistrial is denied, and I don't see an admonition necessary in this, based on his arguments.

We have stated many times that the trial court is given broad discretion to control counsel in closing arguments, and we do not interfere with that discretion absent a manifest abuse of discretion. *See, e.g., Tryon, supra; Leaks v. State,* 339 Ark. 348, 5 S.W.3d 448 (1999); *Lee v. State,* 326 Ark. 529, 932 S.W.2d 756 (1996). "Although it is not good practice for counsel to inject their personal beliefs into the closing arguments, mere expressions of

opinion by counsel in closing argument are not reversible error so long as they do not purposely arouse passion and prejudice." *Neff v. State*, 287 Ark. 88, 94, 696 S.W.2d 736, 740 (1985). Furthermore, the trial court is in the best position to evaluate the potential for prejudice based on the prosecutor's remarks. *Tryon, supra; Leaks, supra*.

 Here, in the context of arguing that Jefferson's actions were committed under circumstances manifesting extreme indifference to the value of human life, the prosecutor stated that, in his experience, "I've seen some bad, bad stuff. But I have never, as long as I have been prosecuting, seen or witnessed anything — [.]" When the prosecutor made the comment, the jury had already viewed a video graphically showing the incident from several angles of the troopers' vehicle cameras. The State points out that the prosecutor had previously stated that this case was unique in that the aggravated robbery, the high-speed chase, and the resulting tragedy were on video. The prosecutor immediately moved on to argue that the video itself evidenced that Jefferson acted with extreme indifference. Therefore, the State contends, the prosecutor's comment was an expression of his opinion about viewing a person getting hit by a car and was not sufficiently prejudicial under the circumstances. We agree. Further, we note that, while the circuit court did not provide a curative instruction to the jury, the court had, of course, already instructed the jury that closing arguments were not evidence. For these reasons, the circuit court did not abuse its discretion in denying Jefferson's motion for mistrial or in failing to admonish the jury upon Jefferson's objection. *See, e.g., Tryon, supra*.

*C. Improper Accusations Against the Defendant and Defense Counsel*

In his opening statement, the prosecutor wrote on the court blackboard "We <u>are</u> responsible for the consequences of our actions." The circuit court allowed defense counsel to erase that writing before testimony. The prosecutor again wrote it on the blackboard during his first closing argument, and again, the circuit court permitted erasure of the statement before the closing argument. The following colloquy subsequently took place:

> DEPUTY PROSECUTING ATTORNEY: I knew, and I suspect everyone of you all knew when you came out of that jury room after we had completed voir dire, that where

we were coming in this case is exactly where we are right now. You've got to come down to the proposition of what does it mean to cause somebody's death, and why that's on the board up there and that's why it got erased before. Because they can't stand it and —

DEFENSE COUNSEL: Your Honor, may I approach?

BENCH CONFERENCE:

DEFENSE COUNSEL: That is totally improper argument. Mr. Long knows it's not proper just to leave mottos and aphorisms up, you know, on a bulletin board during a trial.

DEPUTY PROSECUTING ATTORNEY: If it's not proper did your Honor instruct for it to be erased?

DEFENSE COUNSEL: I ask permission and — I asked permission to erase and it was allowed — and because it was the proper thing to do, and I move for a mistrial and without waiving a motion for mistrial I — I — even thought an admonition is insufficient, I ask that it be admon — that the jury be admonished that — that having that — having items from opening statement displayed to the jury during the trial is improper and that's why it was erased.

THE COURT: The court's of the opinion that the jury instructions properly cover it. The motion's denied and the admonition's denied.

DEFENSE COUNSEL: Your Honor — for the record, just in case the record is not clear, the item which was put on a portable blackboard in the court in opening statement, which was erased and to which you refers [sic] and which is replaced by Mr. Morledge in close, reads "We are responsible for the consequences of our actions." With the word "are" "a-r-e" underlined.

THE COURT: Okay.

Jefferson argues that the prosecutor's statement was an improper attack on either the defendant or defense counsel. He states that it is wholly improper for the prosecutor to "attack" the

defense for doing something — erasing the blackboard — specifically permitted by the circuit court. In support of his argument, Jefferson cites *Timmons v. State*, 286 Ark. 42, 688 S.W.2d 944 (1985). *Timmons* is distinguishable from the instant case. In *Timmons*, this court found prejudice where the prosecutor called a witness to the stand when it was known that the witness could not give valid relevant testimony and then argued to the jury that the defense prevented it from hearing the witness's testimony. Here, the prosecutor's reference to the board erasure was not an improper comment on evidence. Jefferson has failed to show that the prosecutor's remark regarding the blackboard erasure was prejudicial. Accordingly, we hold that the circuit court did not abuse its discretion in denying Jefferson's motion for mistrial.

### III. Constitutionality of the Affirmative-Defense Provisions of the Capital-Murder Statute

Jefferson contends that Ark. Code Ann. § 5-10-101(b) (Supp. 2005) is unconstitutional because it establishes an affirmative defense which impermissibly shifts the burden of proof to the defendant with respect to the essential elements of the offense of capital murder. Section 5-10-101(b) provides:

> (b) It is an affirmative defense to any prosecution of subdivision (a)(1) of this section for an offense in which the defendant was not the only participant that the defendant did not commit the homicidal act or in any way solicit, command, induce, procure, counsel, or aid in its commission.

Jefferson submits that by requiring a defendant to show that he did not commit the homicidal act or in any way solicit, command, induce, procure, counsel, or aid in its commission, the statute places an unconstitutional burden of proof on a defendant. Further, he states that, under the Due Process Clauses of the Fifth and Fourteenth Amendments and analogous state provisions, it is the State's responsibility to prove all elements of the offense, i.e., that Jefferson committed the homicidal act or in some way solicited, commanded, induced, procured, counseled, or aided in its commission. By its phraseology, Jefferson contends, the statute has the effect of requiring him to prove that he was not involved in the homicidal act itself.

Jefferson concedes that this court has previously rejected his argument in previous cases. Indeed, this court has repeatedly held that the affirmative-defense provision of the capital-murder statute

does not unconstitutionally shift the burden of proof to the defendant. *See Jones v. State*, 336 Ark. 191, 984 S.W.2d 432 (1999); *Fairchild v. State*, 284 Ark. 289, 681 S.W.2d 380 (1984); *Moss v. State*, 280 Ark. 27, 655 S.W.2d 375 (1983). Jefferson urges that, to the extent that they hold the affirmative-defense provision constitutional, this court's decisions in *Jones*, *Fairchild*, and *Moss* should be overruled. In support of this argument, he cites *Sandstrom v. Montana*, 442 U.S. 510 (1979), and *Francis v. Franklin*, 471 U.S. 307 (1985). Further, he claims that, in *Moss*, *supra*, this court misconstrued *Patterson v. New York*, 432 U.S. 197 (1977), which clarified *Mullaney v. Wilbur*, 421 U.S. 684 (1975).

We rejected these arguments in *Jones*, explaining:

> In *Moss v. State*, 280 Ark. 27, 655 S.W.2d 375 (1983), *cert. denied*, 465 U.S. 1105 (1984), this court was presented with this precise issue of shifting burden of proof. We held that the Due Process Clause requires the prosecution to prove beyond a reasonable doubt all the elements of the offense charged but that it does not require the prosecution to prove the nonexistence of all affirmative defenses. In holding as we did, we emphasized that none of the elements of the § 5-10-101(b) affirmative defense, that is, that the defendant was not the only participant in the murder, did not commit the homicidal act, and did not in any way solicit, command, induce, procure, counsel, or aid in the homicide, were elements of the crime of capital felony murder. We further emphasized that the defendant did not have to prove the affirmative defense under § 5-10-101(b) until the prosecution had met its burden of proof on the charged offense. This court reiterated this holding in *Fairchild v. State*, 284 Ark. 289, 681 S.W.2d 380 (1984).
>
> Jones contends that this court should now reconsider the issue and overrule the *Fairchild* and *Moss* decisions in light of two United States Supreme Court cases. *See Francis v. Franklin*, 471 U.S. 307 (1985); *Sandstrom v. Montana*, 442 U.S. 510 (1979). In *Sandstrom*, the Court framed the issue to be whether in a case where intent is an element of the crime charged, the jury instruction that the law presumes a person to intend the ordinary consequences of his voluntary acts violated the Fourteenth Amendment's requirement that the prosecution prove every element of a criminal offense beyond a reasonable doubt. The defendant in *Sandstrom* was charged with an intentional homicide in that he "purposefully or knowingly" caused the victim's death. The Court held that this presumption that a person intends the ordinary consequences of his

actions conflicted with the overriding presumption of innocence conferred on an accused. The Court's reasoning was that upon a finding of proof of one element of the crime (causing death) and of facts insufficient to establish the second element (the voluntariness and ordinary consequences of the defendant's actions), the jury could have reasonably concluded that it was directed to find against the defendant on the element of intent. Thus, because of the presumption that one intends the natural consequences of his actions, the prosecution was not required to prove every element of the crime beyond a reasonable doubt.

The situation in the instant case is categorically different. Capital felony murder does not require deliberate or purposeful intent as an element of the offense. Moreover, in the instant case, we are not faced with a presumption that shifts the burden of proving the elements of the charged offense to the defendant. Instead, *after* the State proves all the elements of the charged offense of capital felony murder beyond a reasonable doubt, the defendant may prove as an affirmative defense under § 5-10-101(b) that he was not the trigger man or that he did not in any way assist in the murder.

The second case relied upon by Jones is *Francis v. Franklin, supra.* The defendant in Francis was charged with deliberate murder, not felony murder. The Court instructed the jury that, "[t]he acts of a person of sound mind and discretion are presumed to be the product of the person's will, but the presumption may be rebutted. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts but the presumption may be rebutted." *Francis,* 471 U.S. at 311. The Court held that this instruction created a mandatory presumption because its language was in the nature of a command. The Court concluded that this part of the jury instruction directed the jury to presume an essential element of the offense, the intent to kill, and that this presumption in effect shifted the burden of proof and deprived the defendant of due process. In short, the issue in *Francis* was precisely the issue in *Sandstrom.* Again, intent is not an element of capital felony murder in the case at bar.

The appellant also contends that our decision in *Moss v. State, supra,* misconstrued the Supreme Court's holding in *Patterson v. New York,* 432 U.S. 197 (1977) (clarifying its earlier decision of *Mullaney v. Wilbur,* 421 U.S. 684 (1975)). We disagree. In *Patterson,* the issue was an affirmative defense to murder allowing the defendant to show he "acted under the influence of extreme emotional distur-

bance for which there was a reasonable explanation or excuse."
*Patterson, supra,* at 198. In *Moss,* we noted the similarity between this
affirmative defense and the one at issue in the case at bar. Contrary
to Jones's assertion, we see nothing in our *Moss* opinion that
misconstrues either *Patterson* or *Mullaney.*

*Jones,* 336 Ark. at 199-201, 984 S.W.2d at 436-37.

We do not lightly overrule cases and apply a strong pre-
sumption in favor of the validity of prior decisions. *See, e.g.,*
*Thomas v. State,* 370 Ark. 70, 257 S.W.3d 92 (2007); *State v.*
*Singleton,* 340 Ark. 710, 13 S.W.3d 584 (2000). As a matter of
public policy, it is necessary to uphold our prior decisions unless a
great injury or injustice would result. *Thomas, supra.*

Here, Jefferson has failed to meet the high burden of
showing that our refusal to overrule *Jones, Fairchild,* and *Moss*
would result in great injustice or injury. The affirmative defense
provision of Ark. Code Ann. § 5-10-101(b) does not shift the
burden of proving the elements of the charged offense to the
defendant. *See Jones,* 336 Ark. at 201, 984 S.W.2d at 436. Rather,
*after* the State proves all the elements of the charged offense of
capital felony murder beyond a reasonable doubt, the defendant
may prove the affirmative defense by a preponderance of the
evidence. *See id.* We hold that the circuit court did not err in
rejecting Jefferson's argument that the affirmative-defense provi-
sions of the capital-murder statute unconstitutionally shift the
burden of proof to the defendant. Moreover, Jefferson has failed to
present this court with convincing argument that *Jones, Fairchild,*
and *Moss* should be overruled. Therefore, we decline to do so.

### IV. Fleeing

Jefferson's final point on appeal is that his conviction for
fleeing should be reduced to a misdemeanor. Jefferson was charged
and convicted of Class D felony fleeing pursuant to Ark. Code
Ann. § 5-54-125(a) and (d)(2) (Repl. 2005), which provide:

(a) If a person knows that his or her immediate arrest or detention
is being attempted by a duly authorized law enforcement officer, it
is the lawful duty of the person to refrain from fleeing, either on foot
or by means of any vehicle or conveyance.

(d)(2) Fleeing by means of any vehicle or conveyance is considered
a Class D felony if, under circumstances manifesting extreme

indifference to the value of human life, a person purposely operates the vehicle or conveyance in such a manner that creates a substantial danger of death or serious physical injury to another person.

■ Jefferson first contends that the fleeing statute is unconstitutionally vague due to the use of the phrase "extreme indifference." He states that, since the phrase has never been defined, it is improper to base a conviction upon it. Having previously discussed whether this phrase is unconstitutionally vague with respect to the capital-murder statute, we need not discuss it further here. As previously noted, the cases interpreting the phrase provide fair warning that it involves a life-threatening activity. Jefferson's actions of speeding and fleeing on a busy interstate clearly fell within the conduct prohibited by the "extreme indifference" phrase. Therefore, we hold that the circuit court did not err in denying Jefferson's challenge to the phrase.

Finally, Jefferson challenges the constitutionality of the verdict form used for the offense of fleeing. The verdict form used in this case, AMI Crim. 2d 5422-VF, provides in relevant part:

If your verdict is guilty, you shall make ONE of the following findings:

We, the Jury, find beyond a reasonable doubt that Wesley Jefferson:

( ) 1. Fled by means of a vehicle or conveyance and, under circumstances manifesting extreme indifference to the value of human live [sic], purposely operated the vehicle or conveyance in a manner that created a substantial danger of death or serious physical injury to any person.

( ) 2. Fled by means of any vehicle or conveyance.

Jefferson argued below that the verdict form required the jury to make aggravated findings. Jefferson proposed that the word "shall" should be replaced with the word "may." The circuit court overruled the objection.

■ Jefferson appears to suggest that the verdict form constitutes a mandatory sentence enhancer. He claims that this is the functional equivalent of a directed verdict of guilty and is unconstitutional, and he cites *Apprendi v. New Jersey*, 530 U.S. 466

(2000), in support of his argument. Jefferson has failed to present any convincing argument on this point and, therefore, we will not consider it. *See, e.g., Jester v. State*, 367 Ark. 249, 239 S.W.3d 484 (2006).

## 4-3(h) Review

In compliance with Ark. Sup. Ct. R. 4-3(h), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to the appellant, and no prejudicial error has been found. We do note that, per Jefferson's request in his notice of appeal, the record does not contain a transcript of voir dire. While we believe the better approach would be to provide this court with a complete record when a term of life imprisonment is imposed, *see Ellis v. State*, 366 Ark. 46, 233 S.W.3d 606 (2006); *O'Neal v. State*, 356 Ark. 674, 158 S.W.3d 175 (2004), pursuant to Ark. Sup. Ct. R. 3-4(b), the impaneling or swearing of the jury, the names of the jurors, or any motion, affidavit, order, or ruling in reference thereto is not transcribed unless expressly called for by a party's designation of the record. Because Jefferson excluded voir dire from his notice of appeal and, thus, those matters were not transcribed, we are left to assume there were no adverse rulings.

Affirmed.

IMBER, J., not participating.