Timmy Glen MURPHY and Lewis Ray *v.* STATE of Arkansas

CA CR 02-1104                                    117 S.W.3d 627

Court of Appeals of Arkansas
Division IV
Opinion delivered September 10, 2003

*John L. Kearney*, for appellants.

*Mark Pryor*, Att'y Gen., by: *Misty Wilson Borkowski*, Ass't Att'y Gen., for appellee.

Larry D. Vaught, Judge. This is an appeal from a Drew County Circuit Court jury trial in which appellants Timmy Glen Murphy and Lewis Ray were each convicted of sexual assault in the first degree and sentenced to ten years in the Arkansas Department of Correction. On appeal, appellants raise two points, (1) whether there was sufficient evidence to support their convictions, which required the State to prove their status as temporary caretakers or persons in a position of trust or authority over the victim, and (2) whether the trial court abused its discretion in denying appellants' motion for continuance filed the day before trial when, less than ten days prior to trial, the State amended the information from rape to sexual assault in the first degree. We affirm.

On or about December 7, 2001, appellants Murphy (then age forty) and Ray (then age thirty-nine), along with Ray's mother and her friend, Sue Tew, visited the home of Mark and Sherrie Cater[1] around 3:30 p.m. The victim, then age sixteen, is the son of Mr. Cater and the stepson of Mrs. Cater. He arrived home at approximately 3:50 p.m. At some point during the visit, the victim's parents granted appellants permission[2] to take the son out to eat, go Christmas shopping, and spend the night at appellants' home. There is testimony that the victim was scheduled to meet with appellant Murphy the following morning to receive tutoring for his biology class.

It is undisputed that the victim's parents were aware of the appellants' openly homosexual relationship. The Caters testified that they informed appellants that they accepted their lifestyle, but warned the appellants not to "try anything" with their son. According to testimony, appellant Ray assured the Caters, "we'll keep ourselves to each other and leave your son alone. He's just there for the night to have a good time with us."

According to testimony from the victim at trial, both appellants engaged in deviate sexual activity with him, including fondling, oral and anal sex, upon arriving at their home after dinner and shopping. Appellants were originally charged with rape, pursuant to Ark. Code Ann. § 5-14-103 (Supp. 2001), but less than ten days prior to their scheduled trial date the charges were

---

[1] The appellants knew the Caters through the victim's stepmother, Sherrie Cater, who was employed as an in-home-aide for appellant Ray's mother.

[2] There is conflicting testimony as to whether the victim or the appellants asked for permission, but it is undisputed that the Caters gave permission for their son to go.

amended to sexual assault in the first degree, pursuant to Ark. Code Ann. § 5-14-124(a)(3) (Supp. 2001). Appellants moved jointly for a continuance because of the amended charges, but the motion was denied. At their trial held on June 26, 2002, statements from both appellants, admitting to having sexual relations with the victim, were introduced without objection. A jury convicted both appellants of first-degree sexual assault of the sixteen-year-old victim and sentenced each to ten years in the Arkansas Department of Correction pursuant to a judgment and commitment order entered on July 9, 2002. From that order comes this appeal.

Appellant Ray elected to adopt the same argument set forth in the appellate brief of his co-appellant, Murphy. Accordingly, their arguments will be reviewed together. At the close of the State's case, appellants moved for a directed verdict challenging the sufficiency of the evidence regarding the State's proof that they were temporary caretakers or persons in a position of trust or authority over the victim as required by Ark. Code Ann. § 5-14-124(a)(3). The trial court denied the motion, as well as the renewed motion at the end of their case. Appellants now challenge the denial of their motion.

A directed-verdict motion is a challenge to the sufficiency of the evidence. *Taylor v. State,* 77 Ark. App. 144, 72 S.W.3d 882 (2002). When the sufficiency of the evidence is challenged on appeal from a criminal conviction, we review the evidence and all reasonable inferences in the light most favorable to the State and will affirm if the finding of guilt is supported by substantial evidence. *Brown v. State,* 74 Ark. App. 281, 47 S.W.3d 314 (2001). Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or another that passes beyond mere speculation or conjecture. *Reinert v. State,* 348 Ark. 1, 71 S.W.3d 52 (2002).

The appellants argue that the State failed to prove that either of them was a "temporary caretaker, or a person in a position of trust or authority over the victim[,]" which is required for a conviction under Ark. Code Ann. § 5-14-124(a)(3). Appellants claim that this must be proven because they fail to fit into any of the specific categories listed within the statute, which reads in pertinent part:

5-14-124. *Sexual assault in the first degree.*

(a) A person commits sexual assault in the first degree if the person engages in sexual intercourse or deviate sexual activity with another person, not the person's spouse, who is less than eighteen (18) years of age and the person:

(1) Is employed with the Department of Correction, Department of Community Punishment, Department of Human Services, any city or county jail or juvenile detention facility, and the victim is in the custody of the Department of Correction, Department of Community Punishment, Department of Human Services, any city or county jail, or juvenile detention facility, or their contractors or agents;

(2) Is a professional under § 12-12-507(b) and is in a position of trust or authority over the victim and uses the position to engage in sexual intercourse or deviate sexual activity; or

(3) Is the victim's guardian, an employee in the victim's school or school district, a temporary caretaker, or a person in a position of trust or authority over the victim.

They assert that they were no more than social friends of the victim's family, which is not covered by the "catch-all" language in subparagraph (a)(3), and therefore could not be convicted under this particular statute.

■ This statute was recently enacted, and there are no published Arkansas cases directly on point that define the challenged terms, "temporary caretaker" or "position of trust or authority." A statute is to be construed just as it reads, "giving the words their ordinary and usually accepted meaning in common language, and if the language of the statute is plain and unambiguous, and conveys a clear and definite meaning, there is no occasion to resort to rules of statutory interpretation." *Smith v. State*, 352 Ark. 92, 101, 98 S.W.3d 433, 440 (2003). Appellants argue that the statute must not be read broadly, because to do so would put any adult who comes in contact with a person under the age of eighteen in a position of trust and authority over that person. Both sides refer to definitions of the challenged terms as set forth in

various recent dictionaries, each arguing that the definitions clearly support their respective arguments.

Appellants contend that when the "catch-all" phrase is read in conjunction with the rest of the statute, it is clear that the legislature intended the terms "temporary caretaker" and "in a position of trust or authority" to apply to individuals who are more than mere friends or acquaintances of the victim. They claim that when read in relation to the nonexhaustive list of other positions listed in the statute, the intent was for the language to cover persons with a particular charge or position in caring for or controlling the victim.

Appellants reference one related case, *Reinert v. State*, 348 Ark. 1, 71 S.W.3d 52 (2002), in which the appellant was convicted of violation of a minor in the first degree pursuant to Ark. Code Ann. § 5-14-120 (Repl. 1997) (repealed 2001). There, the appellant had been living with his girlfriend, the sixteen-year-old victim's mother, for two years; and by his own admission, he was the disciplinarian and authority figure in the household. The appellant challenged the constitutionality of the statute because of its failure to define "temporary caretaker" and "a person in a position of trust and authority." In *Reinert*, the supreme court found that the challenged statute was not void for vagueness as applied to the appellant in that case because the term "guardian" was defined in the statute and clearly applied to the appellant. The supreme court did not address the terms specifically challenged in the instant case because another defined term, "guardian," directly applied to the facts in that case. The appellants in the present case maintain that although not clearly defined in the statute, the challenged terms were intended to apply to individuals in a position of caring for or controlling the victim and not merely a friend or social host.

Additionally, the appellants testified that the victim's parents were aware that the appellants were consuming alcoholic beverages and had smoked marijuana on the day the incident occurred. They also maintain that their home was within walking distance of the victim's home and that he was free to leave at any time. Appellants contend that in light of these factors, as well as the knowledge of the victim's parents of their homosexual relationship, it would be "ludicrous to say that [appellants] were in a position of trust or authority" over the victim.

Although not an Arkansas case, *People v. Kaminski*, 246 Ill. App. 3d 77, 615 N.E.2d 808 (1993), is similar and instructive. In *Kaminski*, the appellate court affirmed the appellant's conviction for sexually assaulting his seventeen-year-old sister-in-law. The appellant argued that the state had failed to prove that he "held a position of trust, authority or supervision in relation to the victim," as required by the statute with which he was charged.[3] His contention was that the phrase did not apply to his situation because he was a "one-night social host." *Kaminski*, 246 Ill. App. 3d at 82, 615 N.E.2d at 812. Like the victim in the instant case, the victim in *Kaminski* was a minor who resided with and was cared for by her parents. Likewise, permission was obtained from her parents to spend the night with the appellant. The Illinois court made the following finding:

> We find defendant's assertion that he merely acquiesced to an overnight stay and did not hold a position of supervision over the victim to be an improbable characterization of the undisputed evidence. Although the victim's age might have minimized the degree of "authority" defendant and [the sister] could have exercised over her, it did not preclude their overseeing her overnight stay with the responsibility of notifying her parents if something went wrong and make certain that her needs were attended to, including providing a safe place for her to spend the night. We further note that defendant would not have had the opportunity to assault the victim sexually had her parents not entrusted her care to defendant and [her sister] for the night.

*Kaminski*, 246 Ill. App. 3d at 82-83, 615 N.E.2d at 812.

As mentioned above, the victim in the instant case was a sixteen-year-old minor who lived with his parents. There was testimony that he was somewhat developmentally delayed compared to "normal" children his age and that he did not drive. From our review of the evidence, the victim in this case, besides being a year younger, was even more dependent on adult care and supervision than the victim in *Kaminski* was. It is undisputed that appellants specifically obtained permission from the victim's parents for him to leave with them for the express purposes of going out for dinner and Christmas shopping, as well as to spend the

---

[3] Ill. Rev. Stat. Ch. 38, para. 12-13(a)(4) (1989).

night at their home. There is testimony that the victim's parents asked for, and received, assurances from the appellants that they would look after the victim and not "try anything" with him. It is reasonable from the circumstances to infer that the victim's parents expected appellants to provide food, transportation, safe lodging, and care for their son while he was with them. Also, similar to the circumstances in *Kaminski*, appellants would not have had the opportunity to assault the victim absent his parents' entrusting him to their care.

■ Not cited by either party is the related case of *People v. Secor*, 279 Ill. App. 3d 389, 664 N.E.2d 1054 (1996), which cites *Kaminski* and expands the court's reasoning beyond the familial relationship. In *Secor*, the court affirmed a conviction of sexual assault against a fourteen-year-old victim who was spending the night with the appellant's son in their home. The appellant was not a stranger to the victim, but rather a friend and neighbor of the victim's family. The court determined that although the appellant and victim were not related, their relationship raised a strong inference of trust and supervision; and further, that the appellant's function in that relationship could be characterized, at a minimum, as that of a babysitter or chaperone. This situation is analogous to the instant case. Under the facts of this particular case, we find that there was sufficient evidence from which the jury could have determined that the appellants were in a position of trust or authority in relation to the victim.

On June 17, 2002, the State amended the information against appellants, reducing the charge from rape to sexual assault in the first degree. This occurred approximately eight days before trial, which was scheduled for June 25 and 26, 2002. The day before the trial, appellants filed a joint motion for continuance, asserting lack of time to prepare an adequate defense on the amended charge. On the day of trial, in a pretrial hearing, the motion was heard and denied by the trial court. Appellants appeal that denial as reversible error.

■ Rule 27.3 (2003) of the Arkansas Rules of Criminal Procedure states that a trial court shall grant a continuance only upon a showing of good cause and only for so long as is necessary, taking into account not only the request or consent of the prosecuting attorney or defense counsel, but also the public interest in prompt disposition of the case. When considering a trial

court's denial of a motion for continuance that is premised on a lack of time to prepare, the appellate courts review the totality of the circumstances. *Wood v. State*, 75 Ark. App. 22, 53 S.W.3d 56 (2001). The moving party bears the burden of proving prejudice, and we will not reverse absent a showing of abuse of discretion. *Id.* Prejudice is demonstrated by showing what an attorney failed to do that could have been done, or what an attorney did that would not have been done, if afforded more time. *Id.* Additionally, an appellant must not only show prejudice on the part of the trial court, but also that the prejudice amounts to a denial of justice. *See Smith v. State, supra*, 352 Ark. at 106, 98 S.W.3d at 443.

Appellants argue that while they were prepared to defend the charge of rape, the amended charge of sexual assault in the first degree required them to change their defense. They claim that while the charge of rape was pending, they intended to rely on the defense that the victim was not mentally defective or mentally incapacitated, which was a required element on the particular charge of rape filed in the case. They assert that they needed additional time to research the undefined, challenged terms of the statute, and that they might have been able to argue that the statute was unconstitutionally void for vagueness because of the unde‑fined terms. However, appellant Murphy's attorney specifically stated at the pretrial hearing, "I've tried to research it, Judge, and I couldn't find any case law at all on it." The trial court determined that the week between the amendment of the information and scheduled trial date was adequate time to research other sources for definition of the challenged terms and that it was not mutually exclusive for appellants to be both the victim's friends and tem‑porary caretakers.

Appellants also state that had their motion been granted, they could have potentially located additional witnesses to specifi‑cally address whether the victim was as dependent on adults as his parents contended. They allege that witnesses could have been procured to testify as to the relationship between the victim and appellants and whether, in fact, they were looked upon by either the victim or his parents as temporary caretakers or persons in a position of trust or authority.

The State asserts that appellants were not diligent in seeking a continuance, and we have stated that an absence of due diligence will suffice as grounds to deny a continuance. *See Woods, supra.* Although the information was amended eight days before

the trial was set to begin, appellants waited until the day before trial to file their motion for continuance, claiming there was inadequate time to prepare their defense to the new charge. The State is entitled to amend an information at any time prior to the case being submitted to the jury so long as the amendment does not change the nature or degree of the offense charged or create unfair surprise. *Stewart v. State*, 338 Ark. 608, 999 S.W.2d 684 (1999). The State alleges that the reduction in the charge from a Class Y felony to a Class A felony, both of which are sexual offenses, was not a change in the nature or degree of the offense. The State likewise argues that there was no undue surprise because the facts of the case and the proof of the crime, i.e., the relationship between the appellants, the victim, and the victim's parents, remained the same.

We agree with the State's argument that based on the totality of the circumstances test, the trial court properly denied appellants' motion for a continuance. However, we disagree with the argument that the proof under the two charges remained the same. Appellants were initially charged with rape pursuant to Ark. Code Ann. § 5-14-103, which reads in part:

> 5-14-103. *Rape.*
>
> (a)(i) A person commits rape if he engages in sexual intercourse or deviate sexual activity with another person:
>
> (A) By forcible compulsion; or
>
> (B) Who is incapable of consent because he is physically helpless, mentally defective, or mentally incapacitated ...

There is no language in that statute regarding the challenged terms, "temporary caretaker," or "person in a position of trust or authority." Notwithstanding, we affirm on this point because there is evidence from which the trial court could find that the appellants' lawyers had sufficient time to research the new issues and were less than diligent in filing their motion for continuance.

Affirmed.

STROUD, C.J., and BIRD, J., agree.