Jimmy Ray MAY *v.* STATE of Arkansas

CA CR 05-523                                    228 S.W.3d 517

Court of Appeals of Arkansas
Opinion delivered February 15, 2006

*John Wesley Hall Jr.*, for appellant.

*Mike Beebe*, Ark. Att'y Gen., by: *Laura Shue*, Ass't Att'y Gen., for appellee.

JOHN B. ROBBINS, Judge. Appellant Jimmy Ray May appeals his conviction entered after a jury trial in Boone County for first-degree sexual assault against a minor female, A.T., who was a student at his taekwondo school.[1] He was sentenced to serve six years in the Arkansas Department of Correction for this crime. On appeal, appellant argues two points for reversal: (1) that there is insufficient evidence that appellant was a "temporary caretaker, or other person in a position of trust or authority over the victim" for purposes of the first-degree sexual-assault statute, Ark. Code Ann. § 5-14-124 (Supp. 2001), and (2) that the State failed to bring him to trial in a speedy manner as required by the Arkansas Rules of Criminal Procedure. We disagree with his arguments and affirm.

We first consider the sufficiency of the evidence, as we must. *See Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003). The State charged appellant pursuant to Ark. Code Ann. § 5-14-124, which provides in pertinent part:

> (a) A person commits sexual assault in the first degree if the person engages in sexual intercourse or deviate sexual activity with another person, not the person's spouse, who is less than eighteen (18) years of age and the person:
>
> . . . .
>
> (3) Is the victim's guardian, an employee in the victim's school or school district, *a temporary caretaker, or a person in a position of trust or authority over the victim.*

(Emphasis added.) Appellant argued to the trial court that the State failed to prove that he fit the descriptors emphasized in subsection (a)(3) by moving for directed verdict at the appropriate times, and he presents this argument to us on appeal.

A directed-verdict motion is a challenge to the sufficiency of the evidence. *Taylor v. State*, 77 Ark. App. 144, 72 S.W.3d 882 (2002). When the sufficiency of the evidence is challenged on

---

[1] Appellant was also charged with rape of the minor female. The jury acquitted him of that charge.

appeal from a criminal conviction, we review the evidence and all reasonable inferences in the light most favorable to the State and will affirm if the finding of guilt is supported by substantial evidence. *Brown v. State*, 74 Ark. App. 281, 47 S.W.3d 314 (2001). Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or another that passes beyond mere speculation or conjecture. *Reinert v. State*, 348 Ark. 1, 71 S.W.3d 52 (2002).

In our review, we will not recite with particularity each of the multiple sexual encounters that A.T. testified to because appellant does not contest that her testimony, if believed, would be sufficient proof of sexual intercourse or deviate sexual activity. Appellant was born in 1961, so he was approximately forty years old during the time of the alleged events. A.T. was in her early teen years during the time periods in question, March 2001 to February 2003.

The victim, A.T., testified at the trial in November 2004 that she was presently seventeen years old. A.T. attended appellant's taekwondo class at his studio, Harrison Taekwondo Center, for approximately eight years beginning in 1994 when she was seven years old. She attended class regularly, generally five times per week. A.T. attained a black belt under appellant's instruction and won multiple awards at various tournaments, and for a period of time, she became a student instructor at his studio. A.T. testified that appellant's sexual interest in her began when she was thirteen years old, and it continued until she was about fifteen years old.

Appellant began driving A.T. home from class as a favor to her parents, which became more regular when A.T.'s mother had a new baby. Appellant also drove A.T. to and from tournaments in Little Rock and Memphis when her parents could not; he made arrangements with A.T.'s parents to provide this transportation. A.T. did not deny that she had a "crush" on appellant, and she recalled the first incident being just a kiss, but the incidents changed quickly into sex acts. She testified that appellant engaged in sexual contact of varying degrees with her while she was in his taekwondo studio[2] after class before he would drive her home; in

---

[2] The State entered into evidence laboratory test results that confirmed the presence of seminal fluid in certain locations in the taekwondo studio where A.T. described sex acts to have happened between them. Appellant and his wife testified that any seminal fluids found in and around the studio were attributable to their own conduct.

certain remote locations in their hometown where he would drive her before taking her home; during trips to or from out-of-town taekwondo tournaments; and once on his property while her father was fishing quite a distance away from them. A.T. stated that she did what appellant asked her to do because she trusted and admired him. After she revealed to her parents what had happened, she did not return to his taekwondo class, and her family subsequently moved to Branson, Missouri.

Appellant testified in his own defense, denying the allegations of sexual misconduct with A.T., but acknowledging that A.T. had a "crush" on him. Appellant said he deliberately did not respond to A.T.'s crush; he maintained that he did not have to directly address it because there was a respect that all his students showed him at his school. Appellant stated that he felt betrayed by her lies because A.T. had been a student of his for so long, and he had known her family for so long.

On this evidence, appellant challenges the sufficiency of proof that he fit within the statutory definition of "temporary caretaker or person in a position of trust or authority over the victim." Appellant asserts that to include him in it means that "practically anybody is included" and that "the line cannot be drawn anywhere." We disagree.

In *Bowker v. State*, 363 Ark. 345, 214 S.W.3d 243 (2005), our supreme court considered the meaning of the term "temporary caretaker" as defined in the second-degree sexual assault statute, Ark. Code Ann. § 5-14-125. It took guidance from an earlier decision by our court in *Murphy v. State*, 83 Ark. App. 72, 117 S.W.3d 627 (2003), that construed the first-degree sexual assault statute and the specific terms at issue here — "temporary caretaker, or a person in a position of trust or authority over the victim." In both of those cases, teenage minors were subjected to prohibited sexual activity by the defendants when the teenagers spent the night at the defendants' homes with their parents' permission. Using statutory construction that first requires a "plain-meaning" analysis, both the supreme court and our court took the position that a family friend to whom a minor is entrusted is in a position of authority or trust over that minor during the time of entrustment. Where a relationship raises a strong inference of trust and supervision, and where the appellant's function in the relationship could be characterized at a minimum to be that of a chaperone, this meets the statutory threshold. *See Murphy, supra.* Appellant argues that this statutory provision is overly broad, and

he distinguishes the present circumstances because there was no allegation that A.T. spent the night with appellant. We disagree with appellant's arguments.

We hold that the terms "temporary caretaker, or a person in a position of trust or authority over the victim" could include appellant under this set of facts and that the trial court did not err in not directing a verdict for appellant. The jury, as finder of fact, had before it sufficient evidence from which it could conclude that appellant, an adult male, was in a position of trust or authority over the victim because he had a longstanding relationship with her as her instructor and with her parents, who entrusted her to him to ensure that she was overseen during taekwondo instruction and competition and when transported back home from those times. We believe that this is precisely the kind of scenario envisioned by the legislature when it enacted Ark. Code Ann. § 5-14-124(a)(3).

█ Appellant adds to his argument on appeal that the State was under a duty to present proof that appellant used his position to commit the offense because it is implied by wording in subsection (a)(2) of the statute. First, this argument was not raised to the trial court or answered by it, which prevents our court from considering it on appeal. Second, were we to countenance the argument, we would disagree. The appellate court may not insert words into statutes that are not present by legislative action. In order to sustain a conviction under subsection (a)(2) of the statute, the wording requires that particularly defined "professionals" that are also in a position of trust or authority over the victim must be shown to have used the position to engage in the prohibited activity.[3] Nevertheless, subsection (a)(3) does not contain this additional wording, such that the State was not held to this additional measure of proof. We affirm the trial court's denial of appellant's motion for directed verdict.

The other issue on appeal concerns whether the State violated appellant's right to a speedy trial, which he raised in his motion to dismiss on the day of trial. Pursuant to Ark. R. Crim. P.

---

[3] Subsection (a)(2) refers to professionals defined under Ark. Code Ann. § 12-12-507(b), which relates to those persons who have a duty to report child maltreatment. The list includes twenty-nine professions, including a "teacher." Appellant provides additional argument that appellant cannot be considered a "teacher" in this context. We do not address this alternative argument because there is sufficient evidence under subsection (a)(3) to support the conviction.

28.1, the State is required to try a criminal defendant within twelve months, excluding any periods of delay authorized by Ark. R. Crim. P. 28.3. *Moody v. Arkansas County Circuit Court*, 350 Ark. 176, 85 S.W.3d 534 (2002); *Turner v. State*, 349 Ark. 715, 80 S.W.3d 382 (2002). The accused must be tried within twelve months of the date the charges were filed, except that if prior to that time the defendant has been continuously held in custody, or has been lawfully at liberty, the time for trial commences running from the date of arrest. *See* Ark. R. Crim. P. 28.2. If a defendant is not brought to trial within the requisite time, Ark. R. Crim. P. 30.1 provides that the defendant will be discharged, and such discharge is an absolute bar to prosecution of the same offense and any other offense required to be joined with that offense. *Moody, supra; Turner, supra.* Once the defendant presents a prima facie case of a speedy-trial violation, *i.e.*, that the trial is or will be held outside the applicable speedy-trial period, the State has the burden of showing that the delay was the result of the defendant's conduct or was otherwise justified. *Ferguson v. State*, 343 Ark. 159, 33 S.W.3d 115 (2000). A defendant is not required to bring himself to trial or "bang on the courthouse door" to preserve his right to a speedy trial; the burden is on the courts and the prosecutors to see that trials are held in a timely fashion. *Nelson v. State*, 350 Ark. 311, 86 S.W.3d 909 (2002); *Jones v. State*, 347 Ark. 455, 65 S.W.3d 402 (2002).

The State concedes that appellant presented a prima facie case of a speedy-trial violation because appellant was arrested on February 28, 2003, formally charged on March 25, 2003, and trial commenced on November 22, 2004. The dates between arrest and trial translate into 268 days beyond the one-year limitation, and the State contends that it can viably account for far greater than 268 excludable days. We agree with the State, which renders appellant's argument for dismissal unpersuasive.

We first address the largest delay of 221 days, based upon a continuance granted at the request of appellant. Appellant asserts that this period is not validly charged to him for purposes of a speedy trial, whereas the State asserts that it is.

On the first day of trial, appellant asserted that the continuance he requested on October 6, 2003, was due to defense counsel's conflicting schedule with the original October 13, 2003, trial date. Appellant's October 6 motion stated specifically that he asked the trial court to reset the trial for an "appropriate time in the future" and that "defendant agrees that any and all time for

purposes of speedy trial may be charged to defendant for purposes of this Motion for Continuance." However, he argued that it was the State's duty, not his, to ensure timely rescheduling.

In response to appellant, the prosecutor pointed out all the docket entries, letters, and the specific April 2004 order denoting the continuance and the new trial setting. On the docket sheet is handwritten, "10-6-03 Motion for continuance — Granted as excludible period. G.Webb [circuit judge]". The record reflected a letter to counsel and an order entered by the trial court, both filed on January 21, 2004, informing all parties that trial was reset for May 25, 2004. Another reminder letter was mailed and filed on February 23, 2004. These January and February letters and the January order are noted on the docket sheet. Appellant pointed out that the docket sheet did not reflect to what date the trial was continued, and further that the letters and order did not specify that this was due to a continuance charged to the defendant.

The trial judge stated his recollection that when he realized that a formal order had not been entered at the time he granted the continuance in October, he corrected the clerical error by entering a nunc pro tunc order in April 2004, and he remembered that the date set in May 2004 was the first available setting on the docket. Appellant added that the April 2004 order was filed after speedy-trial had run and was of no effect. The trial court disagreed with appellant, denying his motion to dismiss and a later renewal of that motion.

██ On appeal, appellant again argues that the trial court's failure to commemorate the delay with specificity on the record in a timely fashion requires dismissal of his charges. He cites to *Reed v. State*, 35 Ark. App. 161, 814 S.W.2d 560 (1991), and cases cited therein as support for the proposition that a non-contemporaneous entry on the docket and record at such a late date is ineffectual for purposes of speedy trial. We disagree.

Arkansas Rule of Criminal Procedure 28.3 was amended by per curiam in April 1999 to address this very issue. *See In Re Ark. R. Crim. P. 28*, 337 Ark. Appx. 627 (1999). The Reporter's Notes regarding the 1999 amendment to Rule 28.3 state in relevant part that:

> These changes have been made to address recurrent problems arising in cases. *E.g., Hicks v. State*, 305 Ark. 393, 808 S.W.2d 348 (1991).

> The opening paragraph was added which includes language formerly in subsection (i) [that required a written order or docket entry to evidence the excluded period], but further provides that the trial court may determine the excluded periods when the defendant has moved for dismissal pursuant to Rule 28.1 rather than at an earlier date although the judge is still free to do so earlier. This finding is a determination of the excluded periods.

The State correctly argues that reliance on *Hicks, supra,* which was cited as controlling authority in *Reed, supra,* is misplaced given the 1999 amendment, which provides that the excludible period of time "shall be set forth by the court in a written order or docket entry, but it shall not be necessary for the court to make the determination until the defendant has moved to enforce his right to a speedy trial[.]" Thus, it is of no consequence that the order granting the continuance to the defendant with specificity was not filed until April 2004. *See Romes v. State,* 356 Ark. 26, 144 S.W.3d 750 (2004); *Miles v. State,* 348 Ark. 544, 75 S.W.3d 677 (2002); *Jones v. State,* 347 Ark. 455, 65 S.W.3d 402 (2002); *Chenowith v. State,* 341 Ark. 722, 19 S.W.3d 612 (2000); *Bowen v. State,* 73 Ark. App. 240, 42 S.W.3d 579 (2001). For the foregoing reasons, this period of 221 days is excludible.

The State must account for 268 days of excludible time in order to demonstrate compliance with the rules on speedy trial. The State asserts in its brief that appellant does not dispute the existence of other permissible periods of delay set forth in contemporary and specific orders filed by the trial court:

> (1) June 16, 2003 to August 1, 2003, totaling 45 days; defense agrees to continuance for discovery;
>
> (2) May 13, 2004 to August 27, 2004, totaling 106 days; granted to State due to unavailable witness, noted as excluded period for speedy trial; and
>
> (3) August 27, 2004 to November 22, 2004, totaling 87 days; joint motion due to need to investigate new relevant evidence, noted as excluded period for speedy trial.

We have no hesitation in determining that the time periods listed in (2) and (3) above were properly excludible. *See* Ark. R. Crim. P. 28.3(d)(1) and 28.3(c), respectively. Adding the periods of time that the State has shown are legitimately excluded under Ark. R. Crim. P.

28.3 and relevant case law brings the total to 414 permissibly excluded days. This is well beyond the 268 days necessary for the State to demonstrate that appellant's right to a speedy trial was not violated.

Affirmed.

GLADWIN and CRABTREE, JJ., agree.