Cite as 2025 Ark. App. 374

# ARKANSAS COURT OF APPEALS

DIVISION I
NO. CR-24-683

| | | |
|---|---|---|
| JESSE SUBLETT | | **Opinion Delivered** June 4, 2025 |
| | APPELLANT | APPEAL FROM THE FAULKNER |
| | | COUNTY CIRCUIT COURT |
| V. | | [NO. 23CR-21-968] |
| STATE OF ARKANSAS | | HONORABLE TROY B. BRASWELL, |
| | APPELLEE | JR., JUDGE |
| | | AFFIRMED |

## STEPHANIE POTTER BARRETT, Judge

Jesse Sublett appeals his conviction from the Faulkner County Circuit Court. Following a two-day jury trial held on April 3–4, 2024, Sublett was found guilty of second-degree sexual assault pursuant to Arkansas Code Annotated section 5-14-110(a)(1) (Supp. 2021). He was sentenced to twenty years' imprisonment in the Arkansas Division of Correction. On appeal, Sublett challenges (1) the sufficiency of the evidence supporting his conviction; (2) the admission of a GroupMe conversation he had with the minor victim; and (3) the admission of a photograph. We affirm.

In the spring of 2021, Sublett was teaching construction courses at Conway High School where the minor victim ("MV") was a student. At that time, MV was enrolled in the Junior Reserve Officer Training Corps (JROTC) taught by Sublett's best friend, James

Stiefvater. During that spring, a JROTC project required MV to work in Sublett's classroom outside normal school hours.

In June 2021, MV's mother confronted Stiefvater after learning he had given MV $200 and several other gifts. MV's mother reported these gifts to Conway High School in September 2021, and the Conway Police Department and Arkansas State Police Crimes Against Children Division began an investigation into Stiefvater. During that investigation, MV disclosed to law enforcement officials that she had exchanged messages with Sublett using GroupMe, an encrypted messaging application that he asked MV to download. MV specifically pointed the investigators to a conversation that took place on July 23, 2021, in which Sublett asked her to meet him at the school, but she refused. Sublett then requested that MV share "naughty pictures" of herself in her bra and panties.

MV also disclosed to investigators that during the spring of 2021, Sublett pushed her up against a metal shelf in his classroom storage closet on multiple occasions. The first few times, he was just "in her face," but the last few times, he forcibly kissed her. MV disclosed that during one of these occurrences, Sublett pulled her leggings back to look down the back of her pants, and on another occasion, he touched her breasts and asked to see her bra. MV told investigators that during the final assault in April 2021, as she was leaving Sublett's classroom, he called her back to the closet. There, he placed one hand on her hip and the other on her back. Sublett then pulled MV's buttocks into his penis, which she could feel, three times. He told MV that is what love handles are for. MV informed investigators that she told Stiefvater about the assault as soon as it happened, but he did not report it.

On September 17, 2021, Conway Police Sergeant Brittani Little recorded an interview with Sublett. Sublett denied having an active GroupMe account but admitted he had one in the past. He also denied sending MV inappropriate messages, requesting photographs from her, and having any physical contact with her.

An examination of data extracted from Sublett's cell phone confirmed that GroupMe was installed on his phone in July 2021. The extraction also confirmed that Sublett's phone used the GroupMe application on July 23, 2021, and that his phone contained the same GroupMe profile picture used in the messages found on MV's phone. Additionally, the extraction revealed that, two minutes after asking MV for "naughty pictures," a picture of an erect penis was taken using Sublett's phone.

On November 22, 2021, an arrest warrant was served on Sublett, and he was charged via criminal information on March 10, 2022, with second-degree sexual assault.

On December 1, 2023, a pretrial hearing was held. At the hearing, the parties argued several motions regarding the admission of the evidence extracted from Sublett's cell phone. Sublett argued that the GroupMe conversation and the picture of his penis were more prejudicial than probative because the conversation took place three months after the alleged assault, and the picture was never sent to anyone. Conversely, the State argued that the picture was probative since Sublett had several conversations with MV that culminated in physical contact, and the GroupMe conversation and picture showed Sublett's sexual gratification and intent as to MV. At the conclusion of the hearing, the circuit court stated

it would take the matter under advisement, noting the admissibility of the evidence would greatly depend on the testimony of the witnesses.

On April 3, 2024, a two-day jury trial commenced. During the trial, the circuit court admitted the GroupMe messages on MV's phone as well as the picture of Sublett's penis, ruling that both pieces of evidence showed the totality of Sublett's relationship with MV. The court reasoned that the messages were admissible to show Sublett's proclivity for engaging in similar conduct with students like MV. The court also found that the messages showed that Sublett sought more than just a teacher-student relationship with MV. The circuit court further found that the probative value of the photograph outweighed its prejudicial impact. The court reasoned that the photograph provided evidence of Sublett's intent and motive concerning his earlier conduct with MV.

Following the conclusion of all the evidence, the State presented its closing arguments to the jury. The State's closing began, "Ladies and gentlemen, this is a case about trust. This is sending your child to someone whose job it is to teach them." Sublett immediately objected, arguing the State had "asked the jury to put themselves in the position" of the victims. Sublett asked "for a mistrial or an instruction." The circuit court denied the mistrial motion but instructed the jury that the "closing arguments of the attorneys are not evidence."

After a two-day trial, the jury found Sublett guilty of second-degree sexual assault. He was sentenced to twenty years' imprisonment in the Arkansas Division of Correction.

On appeal, Sublett argues that the circuit court erred by denying his motion for directed verdict. Specifically, he contends the State failed to introduce sufficient evidence

4

to prove he committed second-degree sexual assault because MV's testimony regarding his alleged sex crime was "not credible nor supported by any corroborating evidence." Although he presents this as his last argument on appeal, we address Sublett's challenge to the sufficiency of the evidence first due to double-jeopardy considerations. *See Bolen v. State*, 2023 Ark. App. 373, at 20, 675 S.W.3d 145, 156.

A motion for directed verdict is treated as a challenge to the sufficiency of the evidence. *E.g., id.* at 20, 675 S.W.3d at 156. On review, this court views the evidence in the light most favorable to the State and considers only the evidence that supported the verdict. *Id.* We will affirm a conviction if there is substantial evidence to support it; evidence—either direct or circumstantial—is substantial if it compels a conclusion and passes beyond mere speculation or conjecture. *Milton v. State*, 2023 Ark. App. 382, 675 S.W.3d 173. This determination, along with the credibility of witnesses and the weight of the evidence presented at trial, is left to the jury. *Id.* It "is the function of the jury, and not the reviewing court, to evaluate the credibility of witnesses and to resolve any inconsistencies in the evidence." *Bolen*, 2023 Ark. App. 373, at 21, 675 S.W.3d at 156.

Notably, as in the present case, in sex-crime prosecutions, a victim's testimony need not be corroborated to support a conviction. *Bahena v. State*, 2023 Ark. App. 261, at 3, 667 S.W.3d 553, 555–56. We have consistently held that a victim's testimony alone amounts to substantial evidence that will support a conviction if the testimony adequately specifies the acts prohibited by law. *Langlois v. State*, 2023 Ark. App. 263, at 8–9, 666 S.W.3d 884, 889.

And such testimony is substantial evidence of guilt, even when the victim is a child." *McCauley v. State*, 2023 Ark. 68, at 4, 663 S.W.3d 383, 386.

Sublett was convicted of second-degree sexual assault pursuant to Arkansas Code Annotated section 5-14-125(a)(1) (Supp. 2021). Under subdivision (a)(1), a person commits sexual assault in the second degree if the person engages in sexual contact with another person by forcible compulsion. Sexual contact "means any act of sexual gratification involving the touching, directly or through clothing, of the sex organs . . . of a female[.]" Ark. Code Ann. § 5-14-101(11) (Supp. 2021).

In viewing the evidence in the light most favorable to the State, we hold that the following evidence was sufficient to support Sublett's second-degree sexual-assault conviction. At trial, then sixteen-year-old MV testified that Sublett forcibly kissed her on more than one occasion; pulled her pants down to see her underwear; touched her breasts; and on the final occasion, asked her to come back to the storage closet as she was leaving his classroom where he placed one hand on MV's hip and the other on her back and pulled MV's buttocks into his penis—which she could feel—three times. MV's testimony specifically described and—standing alone—substantiated that Sublett engaged in prohibited sexual touching of MV and, thus, committed second-degree sexual assault. *See Bynum v. State*, 2017 Ark. App. 41, at 8, 511 S.W.3d 860, 865. We affirm on this point.

Sublett next argues that the prosecuting attorney made improper comments during closing argument in violation of the golden rule. A golden-rule argument is one that implores the members of the jury to put themselves in the position of a party or victim.

6

*Waller v. State*, 2024 Ark. App. 113, 686 S.W.3d 15. The golden-rule argument is impermissible because it tends to subvert the objectivity of the jury. *King v. State*, 317 Ark. 293, 877 S.W.2d 583 (1994). It is seen as an attempt to dissuade the jurors from their duty to weigh the evidence and instead to view the case from the standpoint of a litigant or party. *Id.* That is not what the State did here.

The relevant argument and resulting colloquy follow:

| STATE: | Ladies and gentlemen, this is a case about trust. This is sending your child to someone whose job it is to teach them. |
| --- | --- |
| DEFENSE COUNSEL: | Objection Your Honor. |
| . . . . | |
| DEFENSE COUNSEL: | I believe he just passed the – broken the golden rule and asked the jury to put themselves in the position. |
| STATE: | No, I didn't. |
| COURT: | You did say "your." It sounded like – |
| STATE: | That's not how I asked. |
| DEFENSE COUNSEL: | I understand. I can't undo that. It's my responsibility to ask for a mistrial or an instruction. I understand. |
| COURT: | Yeah. I'll give an instruction but deny the motion for mistrial by using the word "your." |

The State did not suggest that jurors place themselves in the position of a victim as in a "golden rule" argument. Moreover, the circuit court has broad discretion in controlling closing arguments and is in a better position to decide the issue of prejudice because of its firsthand observation. *Woodruff v. State*, 313 Ark. 585, 856 S.W.2d 299 (1993). In the

7

absence of manifest or gross abuse of discretion, we will not reverse the action of the circuit court in matters pertaining to its control and supervision of counsel's arguments. *Id.* A reversal of a judgment due to remarks made by counsel during closing arguments is rare and requires that counsel make an appeal to the jurors' passions and emotions. *Mills v. State*, 322 Ark. 647, 910 S.W.2d 682 (1995). In the event an improper statement has been made, an admonition to the jury usually cures any prejudice unless the argument is so patently inflammatory that justice could not be served by continuing the trial. *King v. State*, 317 Ark. 293, 877 S.W.2d 583 (1994). The State's argument was not inflammatory, and the jury was instructed by the court that closing arguments of the attorneys are not evidence. There was no abuse of discretion by the circuit court in declining to declare a mistrial. We affirm.

Finally, Sublett argues that the circuit court abused its discretion in allowing inadmissible evidence concerning the GroupMe conversation between him and MV and the photograph of his erect penis. Challenges to evidentiary rulings are reviewed under the abuse-of-discretion standard. *Hortenberry v. State*, 2017 Ark. 261, 526 S.W.3d 840. The abuse-of-discretion standard is a high threshold that does not simply require error in the circuit court's decision but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *Id.*; *Holland v. State*, 2015 Ark. 341, 471 S.W.3d 179. Additionally, an evidentiary decision will not be reversed absent a showing of prejudice. *Hicks v. State*, 2017 Ark. 262, 526 S.W.3d 831.

Pursuant to Arkansas Rule of Evidence 404(b), "[e]vidence of other crimes, wrongs, or acts it not admissible to prove the character of a person in order to show that he acted in

conformity therewith." Such evidence is permissible for other purposes, however, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *E.g.*, *Duvall v. State*, 2018 Ark. App. 155, at 5, 544 S.W.3d 106, 110. "Under Ark. R. Evid. 404(b), evidence of other crimes will be admitted if it has independent relevance, and its relevance is not substantially outweighed by the danger of unfair prejudice." *Jones v. State*, 349 Ark. 331, 339, 78 S.W.3d 104, 110 (2002). Evidence is independently relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without evidence. *Cluck v. State*, 365 Ark. 166, 226 S.W.3d 780 (2006).

Arkansas appellate courts recognize a "pedophile exception" to Rule 404(b) "that allows the State to introduce evidence of the defendant's similar acts with the same or other children when it is helpful in showing a proclivity for a specific act with a person or class of persons with whom the defendant has an intimate relationship." *Duvall*, 2018 Ark. App. 155, at 6, 544 S.W.3d at 110. The rationale for the exception is that such evidence helps to prove the depraved sexual instinct of the accused. *Jeffries v. State*, 2014 Ark. 239, 434 S.W.3d 889. Further, it is admissible to show the familiarity of the parties, disposition, and antecedent conduct toward one another and to corroborate the testimony of the victim, *see Fields v. State*, 2012 Ark. 353, at 6, and to show motive, intent, or plan. *See Holland*, *supra*. Also, "Rule 404(b) makes no distinction between substantiated and unsubstantiated conduct, or between charged and uncharged conduct. This court has explicitly held that our

application of the pedophile exception does not require that the prior act be charged or substantiated." *Holland*, 2015 Ark. 341, at 8, 471 S.W.3d at 185.

While the State may introduce evidence of unsubstantiated prior allegations to show an accused's "proclivity to offend," there are three essential restrictions on the pedophile exception. *See Baumann v. State*, 2018 Ark. App. 564, 566 S.W.3d 494. First, it is necessary "that there be an 'intimate relationship' between the perpetrator and the victim." *Holland*, 2015 Ark. 341, at 7, 471 S.W.3d at 184. The relationship must be one "close in friendship or acquaintance, familiar, near, or confidential." *Eubanks v. State*, 2009 Ark. 170, at 4–5, 303 S.W.3d 450, 453. This standard is not strict; the act of babysitting has been found to satisfy the "intimate relationship" criterion. *See Morrison v. State*, 2011 Ark. App. 290, at 4. Second, courts require that there be a "sufficient degree of similarity between the evidence to be introduced and the sexual conduct of the defendant. " *Id.* at 3. Physical similarities between the alleged victim and the Rule 404(b) witness such as age and gender are relevant when there is not "identical" conduct toward each by the accused. *See Stewart v. State*, 2011 Ark. App. 658, at 7, 386 S.W.3d 583, 587. Third, evidence admitted pursuant to Rule 404(b) must not be too separated in time, making the evidence unduly remote. *Holland*, 2015 Ark. 341, at 8, 471 S.W.3d at 185. "[A] reasonableness standard is used to determine whether a crime remains relevant rather than a specific time limit." *Id.* at 9, 471 S.W.3d at 185.

Finally, even if evidence of prior allegations of child abuse meets the criteria for the pedophile exception to Rule 404(b), it is still subject to potential exclusion under Rule 403 if the probative value of the evidence is substantially outweighed by the danger of unfair

prejudice. *Holland, supra.* Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Ark. R. Evid. 403.

Sublett argues that the circuit court improperly applied the pedophile exception in its admission of the GroupMe conversation because there is "no similarity between the alleged assault in April and asking for a picture in underwear three months later." We disagree.

First, Sublett was charged with the sexual assault of his student, MV. The teacher/student relationship qualifies as an intimate relationship; thus, an intimate relationship exists between the perpetrator and the victim in this case. Next, messaging MV asking her for pictures in her underwear shows a proclivity for a depraved sexual instinct— specifically, that Sublett had a deviant sexual interest in MV. This evidence of another wrong is sufficiently similar to the sexual assault with which Sublett was charged. Finally, this evidence is not unduly remote such that it requires exclusion. This court has held that the pedophile exception to Rule 404(b) applies to acts that occurred eleven, fourteen, and even twenty-eight years apart. *See Nelson v. State*, 365 Ark. 314, 229 S.W.3d 35 (2006); *Holland*, 2015 Ark. 341, 471 S.W.3d 179; *Baumann*, 2018 Ark. App. 564, 566 S.W.3d 499. The alleged sexual assault of MV took place in April 2021, and the GroupMe conversation took place three months later in July. Furthermore, the evidence's probative value was not outweighed by any unfair prejudice. Indeed, evidence that MV was sexually assaulted was

11

already before the jury by way of testimonial evidence. The probative value of the nature of the relationship between MV and Sublett far outweighed the prejudicial nature of the evidence, warranting its admission. For these reasons, we do not find that the circuit court erred in finding that the pedophile exception to Rule 404(b) applied to the GroupMe conversation.

Sublett additionally argues that the circuit court improperly applied the pedophile exception to the photograph because it was never sent to MV and "had no bearing on the alleged assault months before." We disagree.

It has been established that an intimate relationship existed between Sublett and MV. The photograph at issue in this appeal, while never sent to MV, was taken two minutes after Sublett requested pictures of MV in her underwear. We hold that the photograph is sufficiently similar to the sexual assault in which Sublett was charged because it shows he received sexual gratification from his encounters with MV—whether through a messaging application or in the supply closet of his classroom. We apply the same analysis as above when it comes to the remoteness element of the pedophile exception. The photograph and the GroupMe conversation occurred almost simultaneously; therefore, it cannot be unduly remote such that it requires exclusion. The circuit court did not abuse its discretion in applying the pedophile exception to Rule 404(b) to the photograph.

Turning to the balancing test required under Rule 403, we hold that the circuit court did not err in finding that the photograph's probative value was not outweighed by any unfair prejudice. MV testified in front of the jury that she could feel Sublett's erect penis while he

sexually assaulted her in his classroom. The probative value of the photograph—showing Sublett's sexual gratification from his encounters with MV—outweighed any prejudice to Sublett under these facts.

Affirmed.

VIRDEN and MURPHY, JJ., agree.

*Eugene Clifford*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Jason Michael Johnson*, Ass't Att'y Gen., for appellee.