Michael Jihad AKBAR *v.* STATE of Arkansas

CR 93-966                                                   869 S.W.2d 706

Supreme Court of Arkansas
Opinion delivered January 31, 1994

*Ogles Law Firm, P.A.*, by: *John Ogles*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Gil Dudley*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. Michael Jihad Akbar was found guilty of first degree murder and aggravated assault. His punishment was set at life imprisonment for the murder and six years imprisonment for the assault. He appeals from the murder con-

viction and argues that the evidence of intent to cause the victim's death was insufficient to support the verdict. We affirm the judgment of conviction.

The standard of review is clear. In determining sufficiency of the evidence, the appellate court reviews the evidence most favorably to the appellee, and considers only the evidence that tends to support the verdict. *Gardner* v. *State*, 296 Ark. 41, 754 S.W.2d 518 (1993). The appellate court does not weigh the evidence, but rather determines whether evidence that supports the verdict of guilt is substantial. *Salley* v. *State*, 303 Ark. 278, 796 S.W.2d 335 (1990). Evidence is substantial if it is forceful enough to compel a conclusion one way or another. *Trotter* v. *State*, 290 Ark. 269, 719 S.W.2d 268 (1986).

The law concerning murder is equally clear. "A person commits murder in the first degree if, with a purpose of causing the death of another person, he causes the death of another person." Ark. Code Ann. § 5-10-102(a)(2) (Repl. 1993). The culpable mental state is "purposely" causing the death of another. "A person acts purposely with respect to his conduct or a result thereof when it is his conscious object to engage in conduct of that nature or to cause such a result." Ark. Code Ann. § 5-2-202 (1) (Repl. 1993). Intent is seldom capable of proof by direct evidence. Usually, it must be inferred from the circumstances of the killing. *Starling* v. *State*, 301 Ark. 603, 786 S.W.2d 114 (1990). The intent necessary for first degree murder may be inferred from the type of weapon used, from the manner of its use, and the nature, extent, and location of the wounds. *Williams* v. *State*, 304 Ark. 509, 804 S.W.2d 346 (1991). It is axiomatic that one is presumed to intend the natural and probable consequences of his actions. *Furr* v. *State*, 304 Ark. 41, 822 S.W.2d 380 (1991).

Direct evidence is not required to support a conviction. Circumstantial evidence can provide the basis, but it must be consistent with the defendant's guilt, and inconsistent with any other reasonable conclusion. *Trotter* v. *State*, 290 Ark. 269, 719 S.W.2d 268 (1986). Whether the evidence excludes any other hypothesis is for the jury to determine. *Ciganero* v. *State*, 310 Ark. 504, 838 S.W.2d 361 (1992).

There is substantial evidence, both direct and circumstan-

tial, to support the verdict in this case. Wendy Montgomery testified that she was near the Straight Up Club in Little Rock on the evening Kevin Cohn was killed. She testified that appellant drove his sports car past the club and then returned to the front of the club. Other testimony established that the car was a Datsun 280 ZX automobile with a T top, and all of the top was removed except for the permanent center part. This would allow a driver, without difficulty, to reach out of the open side window and the area above the open side window where the top would normally be. Ms. Montgomery testified that she saw another man, Jerry Craig, in the back seat of appellant's car. She saw Craig stick his hand outside the car and "throw up" a "Crip" gang sign, by making a "C" with his thumb and forefinger. She testified that members of the "Eight Ball Posse" which is a "set" of a rival gang named the "Bloods" were present in the club's parking lot. She testified that someone in the crowd became angry and hit appellant's car with a beer bottle. Next, she saw appellant bend over, pull something from under the car seat, shoot a pistol into the air, and then begin firing into the crowd. She heard six or seven rapidly fired shots. She testified that she did not see anyone else, either in the car or in the crowd, fire a weapon. Very soon afterwards, she saw Cohn lying on the ground. Appellant fled the scene in his car.

Charles Thomas, a member of the Eighth Street Posse set of the Bloods gang, testified that he was outside the club the night of the shooting. Cohn told him there were some Crips in a nearby parking lot. One member of the Crips was wearing his cap pointed to the left, which indicates membership in the Bloods, but Thomas knew that this person was, in fact, a Crip. He stated that such an act was "perpetrating" and can cause trouble. He recognized appellant in this group. Thomas testified that he urged his group to stay out of trouble and to ignore the perpetrating. Thomas corroborated Ms. Montgomery's testimony that subsequently a rider in appellant's car threw up a Crip sign. He testified that appellant made the sign. He explained that making a Crip sign to members of the Bloods can cause trouble because the Bloods consider it to be disrespectful. He confirmed that someone hit appellant's car with a beer bottle. He testified that he saw appellant begin shooting out the window of the car. He testified that, after the first shot, Cohn knocked him down, and

that the second shot hit Cohn as he was attempting to get up and run from the attack. Thomas ran to Cohn after Cohn fell to the ground, and covered him with his body. Thomas heard eight or nine shots. He testified that appellant fled the scene in his car.

Tony Farr, the manager and part owner of the Straight Up Club, also testified that he saw the group standing on the parking lot and observed the bottle being thrown at appellant's car. Although he is not acquainted with appellant and could not identify him in court, Farr stated that he saw a person's hand come out of the driver's side of the car, appellant's side, and fire a pistol into the crowd. He subsequently recognized the victim, Cohn, lying on the ground. He saw appellant's car flee the scene.

David Yarberry and Barbara Polite are both crime scene specialists for the Little Rock Police Department. They found two Remington Peters .380 caliber shell casings at the scene. One of them was bent, as if it had been run over by a car.

The medical examiner testified that Cohn was killed by a bullet wound to the chest. The bullet removed from Cohn's chest was deformed. The testimony indicated the deformed projectile removed from Cohn was consistent with a .380 caliber bullet, although it was not identified definitely as that caliber.

Appellant admitted that he was driving his car at the place and time of the shooting, but contended that passengers in his car were the ones who fired the shots.

In summary, appellant admitted that he was driving the car from which the shots were fired. Wendy Montgomery saw appellant get a pistol out from under the drivers seat. Three witnesses, Ms. Montgomery, Charles Thomas, and Tony Farr, testified that they saw appellant begin rapidly firing the pistol. All three were positive they saw the hand that fired the gun come out of the driver's window, where appellant was sitting, and not from anywhere else in the car. Charles Thomas saw the victim, Kevin Cohn, as he was hit by the second shot. Cohn died as a result of the shot to his chest. A large caliber bullet was removed from Cohn's chest. This evidence of guilt, both direct and circumstantial, is sufficient to support a conviction for first degree murder. The evidence of the type of weapon used, the manner

of its use, and the nature, extent, and location of the wound, infer an intent to commit first degree murder.

Appellant has been sentenced to life imprisonment. Accordingly, pursuant to Rule 4-3(h) of the Rules of the Supreme Court and Court of Appeals, an examination of all rulings adverse to appellant has been made, and there is no reversible error in those rulings.

Affirmed.