Ronald KETELSON *v.* STATE of Arkansas

CR 93-1382                                    877 S.W.2d 910

Supreme Court of Arkansas
Opinion delivered June 20, 1994

*John Wesley Hall, Jr., P.C.*, by: *Craig Lambert*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. Appellant Ronald Ketelson appeals his conviction of capital murder on the grounds that the evidence was insufficient to support the State's charge that he contracted with another person to cause the death of Jeffrey Rhoades and that the trial judge erred in admitting into evidence photos of the deceased's burned body that were prejudicial. We hold that the trial court erred in denying Ketelson's motion for a directed verdict as the evidence was insufficient to sustain his conviction, and, for this reason, it is necessary we reverse and dismiss this case.

On April 3, 1989, Jeffrey Rhoades was murdered by Frank Pilcher. Pilcher was convicted of capital felony murder and sentenced to life imprisonment. We affirmed his conviction. *Pilcher* v. *State*, 303 Ark. 335, 796 .S.W.2d 845 (1990). The State subsequently charged Ketelson with the capital murder of Mr. Rhoades, pursuant to Ark. Code Ann. § 5-110-101(a)(8), alleging Ketelson caused the death of Jeffrey Rhoades by "entering into an agreement" with Pilcher to cause Rhoades' death "in return for anything of value."

■■ At the conclusion of trial, Ketelson made a motion for directed verdict which was denied by the trial court. A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Friar* v. *State*, 313 Ark. 253, 854 S.W.2d 318 (1993). The test for determining the sufficiency of the evidence is whether there is substantial evidence to support the verdict. *Coleman* v. *State*, 315 Ark. 610, 869 S.W.2d 713 (1994). On appeal, we review the evidence in the light most favorable to the appellee and sustain the conviction if there is any substantial evidence to support it. *Abdullah* v. *State*, 301 Ark. 235, 783 S.W.2d 58 (1990). Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Hodge* v. *State*, 303 Ark. 375, 797 S.W.2d 432 (1990).

Reviewing the evidence in the light most favorable to the State, we still must hold that the evidence was not sufficient to sustain the State's charge. At best, the State established that Ketelson was agitated because Rhoades apparently owed him money. However, there was absolutely no proof that an agreement existed between Ketelson and Pilcher to murder Rhoades.

The State presented the testimony of six witnesses in support of its theory. Its primary witness, Marissa Bragg Sharp, testified at length about her involvement with Pilcher in the murder. She told the jury that prior to Rhoades' death, she had become indebted to Ketelson in the amount of $500 for drugs she had obtained through Rhoades. According to Sharp, she knew that Rhoades owed Ketelson money. She described an incident in which some unidentified male who owed Ketelson money had been beat up and had called and left a message on Ketelson's answering machine, asking Ketelson to "get them off him." Sharp said Ketelson responded, "This is what happens when people owe me money and I think this is what is going to happen to Jeff [Rhoades]," and that Jeff needed to be "taken care of."

Sharp also described the night of Rhoades' murder. She and Pilcher went to Rhoades to buy cocaine, and although Rhoades refused to sell any to her because of her debt, he agreed to sell to Pilcher. The three left Rhoades' apartment, and Rhoades followed Sharp and Pilcher to get Pilcher's money, although Sharp admitted that she and Pilcher intended to get away from Rhoades without paying him. The trio went to the Tull Bridge, and Pilcher left on Rhoades' motorcycle while Rhoades and Sharp waited in Sharp's truck. Pilcher returned, ostensibly with money for payment, and Rhoades remarked, "Man, this is just $25.00." Sharp heard a gun shot, and Pilcher left on the motorcycle. Pilcher later returned, shot Rhoades again, and he and Sharp drove around with the body in the bed of the truck. Ultimately, they took Rhoades' body to a dump where Pilcher set it on fire.

The State's other witnesses also failed to provide any evidence of a murder-for-hire agreement between Pilcher and Ketelson. Saline County Sheriff Larry Davis and Medical Examiner Fahmy Malak testified about the crime scene and the cause of Rhoades' death. Joey Gibson testified that he knew Rhoades and that he and Rhoades had gone to Ketelson's house to purchase drugs.

Claude Bennett, an acquaintance of Rhoades and Ketelson, stated that Rhoades owed Ketelson about $5,000 for drugs and for damage Rhoades did to Ketelson's truck. Bennett did not present any testimony of threats made by Ketelson against Rhoades. Rhoades' girlfriend, Sherry Carter, stated that Rhoades owed Ketelson money, but she did not testify regarding any threats Ketelson made against the victim.

Although the State contends that, taken together, the testimony of these witnesses provides circumstantial evidence as to the existence of an agreement between Pilcher and Ketelson — to cause the death of Rhoades — we cannot agree.

██ Granted, circumstantial evidence alone may be sufficient to support a conviction. *Smith* v. *State*, 314 Ark. 448, 863 S.W.2d 563 (1993). However, such evidence must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Akbar* v. *State*, 315 Ark. 627, 869 S.W.2d 706 (1994). Although there was ample testimony to support the fact that Rhoades may have owed Ketelson money and that Ketelson was interested in having him "taken care of," this evidence does not provide proof of an agreement between Pilcher and Ketelson or that Pilcher was to receive anything of value from Ketelson in exchange for Rhoades' death, which is an essential element of the State's charge against Ketelson.

As a result, we reverse and dismiss this case on the insufficiency of the evidence. It is unnecessary that we address Ketelson's argument regarding the admission of certain photographs into evidence under the circumstances.

Reversed and dismissed.