Cite as 2025 Ark. App. 2

# ARKANSAS COURT OF APPEALS
DIVISION III
No. CR-24-222

| | | |
|---|---|---|
| CHARLES JOHNSON, JR. | | Opinion Delivered January 8, 2025 |
| | APPELLANT | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26CR-22-336] |
| V. | | |
| | | HONORABLE RALPH C. OHM, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

**WENDY SCHOLTENS WOOD, Judge**

Charles Johnson appeals a sentencing order of the Garland County Circuit Court convicting him of first-degree murder and four counts of first-degree battery. On appeal, Johnson challenges the sufficiency of the evidence supporting both the murder conviction and three of the battery convictions. He also argues that the circuit court erred in denying his motion to suppress his statement to police and in failing to give a jury instruction for the lesser-included offense of manslaughter. We affirm Johnson's convictions.

On the evening of May 12, 2022, after a high-school-graduation ceremony at the Hot Springs Convention Center, several fights broke out as attendees were walking to the parking lot. Johnson was in the parking lot because he had attended his sister's graduation. According to the testimony of Hot Springs police officers Stephen Parrott and James Moore, they saw Johnson pull out his 9mm handgun and open fire on the crowd, shooting four times. They returned fire to stop Johnson, each officer firing three times. The total number

of shots fired between the two officers and Johnson was ten. Johnson was hit three times but ran behind the convention center and evaded the officers.

One of Johnson's bullets hit Michael Jordan, who died from the injury, and another of Johnson's bullets hit Markezeon Green, wounding his right thigh and shattering his left fibula. Candice Hughes was hit by a stray bullet, which exited her calf but shattered her fibula, leaving shrapnel in her leg. One bullet went through Monique West's thigh, and another bullet grazed the right arm of a minor victim (MV). Officers later followed a trail of blood to a pool of blood behind the convention center. Johnson's mother had picked him up from there and taken him to the hospital where he was treated for gunshot wounds.

Police obtained cellphone video of the person who fired the shots and discovered that the clothing of that person matched the clothing Johnson was wearing when he arrived at the hospital. They obtained an arrest warrant for Johnson, who was discharged into police custody and taken to the Hot Springs Police Department.

At the police department, Detective Mark Fallis read Johnson his *Miranda* rights and said he signed the *Miranda* form. Thereafter, Detective Fallis asked Johnson if he would speak to the officers about the incident, and Johnson said yes. In the interview, Johnson said that he saw a gang member he thought was named "Tod" in the crowd in the parking lot and that he heard Tod say, "There goes that n***a right there." Johnson said that Tod had fired at Johnson the week before. When Johnson saw Tod in the crowd, Johnson pulled out his gun and started shooting at the crowd. He claimed, "I really wasn't trying to shoot at nobody, man, for real," and "[I] think I was shooting in the air, but I don't even remember."

The jury convicted Johnson of first-degree murder with a firearm enhancement and four counts of first-degree battery with one enhancement for being committed in the presence of a minor. He was sentenced to a total of 105 years' imprisonment to be served consecutively.

Johnson argues that there was insufficient evidence to convict him of first-degree murder because the State did not prove that he acted purposely when he shot into the crowd, killing Michael Jordan. He points to his statement in which he said that he was shooting at the crowd and into the air rather than at any particular person.

When reviewing a challenge to the sufficiency of the evidence, we must assess the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Collins v. State*, 2021 Ark. 35, at 4, 617 S.W.3d 701, 704. We affirm a conviction if substantial evidence exists to support it. *Price v. State*, 2019 Ark. 323, at 4, 588 S.W.3d 1, 4. Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion without resorting to speculation or conjecture. *Id.*, 588 S.W.3d at 4. Witness credibility is an issue for the fact-finder, which may believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *McKisick v. State*, 2022 Ark. App. 426, at 4, 653 S.W.3d 839, 843.

A person commits first-degree murder if, "[w]ith a purpose of causing the death of another person, the person causes the death of another person." Ark. Code Ann. § 5-10-102(a)(2) (Supp. 2023). Intent is seldom capable of proof by direct evidence and usually must be inferred from the circumstances of the killing. *Starling v. State*, 301 Ark. 603, 604, 786

3

S.W.2d 114, 116 (1990). A jury may infer that a defendant acted with the intent and purpose necessary for first-degree murder from the type of weapon used and the manner of its use. *Blakes v. State*, 2021 Ark. App. 32, at 4, 615 S.W.3d 768, 771.

Although Johnson denies having the purpose to kill Jordan, one is presumed to intend the natural and probable consequences of his actions. *Akbar v. State*, 315 Ark. 627, 629, 869 S.W.2d 706, 707 (1994). In *Akbar*, the supreme court held there was purposeful intent for first-degree murder when the defendant got a pistol from under the driver's seat of the car he was driving and rapidly fired the pistol out the window into a crowd, killing the victim. *Id.* at 631, 869 S.W.2d at 708–09. Here, Johnson admitted he saw "Tod," who had shot at him the week before, so he pulled out his 9mm handgun and started shooting at the crowd. Both Officers Parrott and Moore testified that they saw Johnson pull out his gun and open fire on the crowd, shooting four times. We hold that this is substantial evidence to support Johnson's conviction for first-degree murder.

Johnson also challenges three of his four battery convictions. Johnson does not challenge the conviction of first-degree battery for the injury to Markezeon Green, which was caused by a bullet from his gun, but Johnson contends that there was insufficient evidence to convict him of first-degree battery against the other three victims. He argues that the State did not present evidence that the injuries to Monique West, Candice Hughes, or MV were caused by bullets from his gun. He claims that it was undisputed that he shot only four bullets, but he was convicted of killing or injuring five people. Officers Parrott and Moore shot six bullets, three of which hit Johnson, leaving three unaccounted for. He argues that

4

on the basis of this evidence, one can only conclude that the police officers caused some of the injuries or that there was an undetected third shooter. He claims that there simply is not sufficient evidence to prove that he caused the injuries to West, Hughes, or MV.

A person commits first-degree battery if "[w]ith the purpose of causing serious physical injury to another person, the person causes serious physical injury to any person by means of a deadly weapon[.]" Ark. Code Ann. § 5-13-201(a)(1) (Supp. 2023). In criminal matters, "[c]ausation may be found when the result would not have occurred but for the conduct of the defendant operating either alone or concurrently with another cause unless: (1) [t]he concurrent cause was clearly sufficient to produce the result; and (2) [t]he conduct of the defendant was clearly insufficient to produce the result." Ark. Code Ann. § 5-2-205 (Repl. 2013). One whose wrongdoing is a concurrent proximate cause of an injury is criminally liable the same as if his wrongdoing were the sole proximate cause of the harm done. *Brown v. State*, 2021 Ark. 16, at 2, 614 S.W.3d 820, 822.

In *Jefferson v. State*, 372 Ark. 307, 276 S.W.3d 214 (2008), the supreme court affirmed a conviction for capital murder on the basis of a challenge to causation similar to the challenge Johnson makes here. In *Jefferson*, the defendant led police on a high-speed chase after robbing a convenience store. A police officer in pursuit struck and killed another police officer who had deployed stop sticks across a roadway to disable Jefferson's vehicle. The supreme court rejected Jefferson's argument that his actions, while "ill-advised," did not cause the death of the trooper, holding that Jefferson's conduct brought about the use of the stop sticks, which would not have been used if Jefferson had pulled over. *Id.* at 314, 276

5

S.W.3d at 221. The court held there was sufficient causation, reasoning that "[b]ut for Jefferson's aggravated robbery, speeding, and fleeing," the slain police officer would not have been in the roadway and would not have been hit by the other officer. *Id.*, 276 S.W.3d at 221.

Here, there was no evidence presented that there was a third shooter. The evidence demonstrated that ten shots were fired between Johnson and Officers Parrott and Moore. Officers Parrott and Moore would not have fired any shots but for Johnson's indiscriminately and illegally firing his handgun into the crowd. Therefore, whether the bullets that injured the victims came from Johnson's gun or from one of the guns of the officers trying to stop Johnson from shooting, we hold that there is substantial evidence of causation to support the convictions for first-degree battery.

Johnson next argues that the circuit court erred in denying his motion to suppress his statement to police. He raised multiple arguments in support of his motion: he claimed he was not properly Mirandized; he did not make a "knowing, voluntary and intelligent waiver of his rights in part because he was [under] the influence of medication"; he had invoked his right to counsel; and he was coerced into making a custodial statement.

The transcript of Johnson's interview at the police station reflects that Detective Fallis started to read Johnson his *Miranda* rights when Johnson asked, "Where's my attorney at?" Detective Fallis replied, "I don't know anything about an attorney. That's up to you." Johnson answered, "All right." Detective Fallis testified at the suppression hearing that he continued to read Johnson his *Miranda* rights, including that Johnson had the right to

6

request that an attorney be present during questioning and that he had the right to stop answering questions at any time. Johnson initialed each of the rights and signed the form stating that he was "waiving his right to remain silent and have an attorney present." Detective Fallis then asked Johnson if he was willing to talk to the officers, and Johnson answered, "Absolutely." Detective Fallis stated that he did not make any promises or threats to Johnson and that Johnson was calm and able to communicate in a normal "straight-forward way," seemed engaged and able to understand the conversation, did not appear to be hallucinating or delusional, and did not invoke his right to an attorney.

Agent James Avant, a criminal investigator with the Arkansas State Police, attended Johnson's interview because he was investigating the officers' discharge of their weapons. Agent Avant testified that when they first walked into the room, Johnson asked if his attorney was there, that they did not know who his attorney was, and that "was about the extent of it." Agent Avant also confirmed Detective Fallis's description of Johnson's execution of the *Miranda*-rights form. He said Johnson was "very coherent," understood Detective Fallis, and did not appear heavily medicated or delusional.

After the hearing, the circuit court[1] entered a letter opinion followed by an order in January 2023 denying Johnson's motion to suppress his statement, specifically finding that Johnson understood his constitutional right to remain silent and that he waived that right knowingly, intelligently, and voluntarily when he gave his statement. The court did not rule

---

[1]The circuit judge at the time was Marcia R. Hearnsberger. She retired in July 2023.

on Johnson's claim that he had invoked his right to counsel. When Johnson reasserted his suppression argument at trial before a new judge presiding in the circuit court,[2] the court stated it was "going to accept Judge Hearnsberger's previous ruling as the rule of the case," denied Johnson's motion to suppress, and allowed a recording of Johnson's interview to be played at trial. Again, the circuit court did not rule on the issue regarding Johnson's request for an attorney.

It is the obligation of an appellant to obtain a ruling from the circuit court to preserve an issue for appellate review. *Lester v. State*, 2024 Ark. App 206, at 17, 687 S.W.3d 344, 357. Johnson failed to obtain a ruling on his argument that he invoked his right to counsel, and his failure to do so precludes review on appeal. *LeFever v. State*, 91 Ark. App. 86, 93, 208 S.W.3d 812, 817 (2005). Accordingly, we hold that this argument is not preserved for appeal.

Finally, Johnson contends that the circuit court erred by refusing his proffered jury instruction on manslaughter.[3] Johnson acknowledges that Michael Jordan was killed by a bullet from Johnson's handgun. He argues, however, that he did not shoot at Jordan; rather, he shot into a group of people involved in fighting that was by all accounts chaotic. He claims that in his statement to police, he said he was not shooting at a person but into the air. Thus, he argues, it was erroneous for the court to refuse to give an instruction on the lesser-included

---

[2]Judge Ralph C. Ohm presided over the December 2023 jury trial.

[3]The manslaughter instruction sought by Johnson was based on Arkansas Code Annotated section 5-10-104(a)(3) (Repl. 2013), which provides that a person commits manslaughter if the person recklessly causes the death of another person.

offense of manslaughter, which he argues was clearly supported by the evidence. He cites *Harshaw v. State*, 344 Ark. 129, 132, 39 S.W.3d 753, 755 (2001), stating that it is "reversible error to refuse to give an instruction on a lesser-included offense when the instruction is supported by even the slightest evidence."

This argument is without merit because of the well-established "skip rule," which provides that when an instruction on a lesser-included offense has been given, and the jury convicts of the greater offense, error resulting from the failure to give an instruction on another still lesser-included offense is cured. *Davis v. State,* 2009 Ark. 478, at 14, 348 S.W.3d 553, 561. The jury in Johnson's trial received instructions on first-degree murder and the lesser-included offense of second-degree murder. Because the jury returned a guilty verdict on the greater offense of first-degree murder, Johnson cannot establish that prejudice resulted from the court's failure to give an instruction on yet another lesser-included offense. *Sims v. State*, 2015 Ark. 363, at 9, 472 S.W.3d 107, 115.

Affirmed.

ABRAMSON and GLADWIN, JJ., agree.

*Vicki Lucas*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Christian Harris*, Ass't Att'y Gen., for appellee.